[Civ. No. 12353.   Second Dist., Div. One.—April 7, 1941.]

M. R. SPENCER et al., Respondents, v. CITY OF ALHAM-
BRA (a Municipal Corporation) et al., Appellants.

James B. Ogg, City Attorney, for Appellants.

Marcus, Rabwin & Nash, Eugene H. Marcus, Harold W. Nash and Emmett A. Tompkins for Respondents.

WHITE, J.—On the 8th day of November, 1938, by a majority vote, the electors of the City of Alhambra adopted an initiative ordinance establishing a scale of minimum salaries for members of the city's police department. The legislative body, known as the commission, of said city, refused to give effect to the provisions of the ordinance, contending that the fixing of minimum salaries for police officers was not subject to vote by the people and was beyond and in excess of the initiative powers of the electors under the terms of the city charter.

Certain members of the police department joined in a petition to the superior court praying for a writ of mandate directing the city commission to put into effect the provisions of the initiative ordinance and to pay them the salaries therein provided for. The City of Alhambra and its officers, respondents in the superior court, interposed a demurrer and a motion to strike, the first of which was overruled and the second denied by the court, with leave granted the city to file its answer. The city declining to file an answer, default was entered against it, following which judgment was rendered directing the issuance of a peremptory writ of mandate as prayed for by petitioners. From that judgment the city prosecutes this appeal.

The charter of the City of Alhambra was framed in accordance with the provisions of section 8 of article XI of the state Constitution, and was approved by the legislature on January 26, 1915. (Stats. 1915, p. 1740; Stats. 1927, p. 2053.)

█ The main contention of appellants is that the city charter provides that the compensation of all members of the police department, save and except the chief of police, shall be fixed by the city manager, who is the chief administrative officer of the municipality, subject to the approval of the city commission. Further, that because there is no requirement that such salaries be fixed by ordinance, the act of the city manager in fixing them is purely administrative and not legislative; and that only ordinances of a municipality which involve an exercise of the legislative prerogative are subject to the initiative or referendum.

There is very creditable authority for the statement that generally speaking the fixing of salaries of public officers and employees is a legislative act. (*State ex rel. Pike* v. *City of Bellingham,* 183 Wash. 439 [48 Pac. (2d) 602]; *State* v. *Tacoma,* 184 Wash. 160 [49 Pac. (2d) 1113]; *Taxpayers' Assn.* v. *City of Houston,* 129 Tex. 627 [105 S. W. (2d) 655]; and cases therein cited; *Eddy* v. *Ashley Borough,* 281 Pa. 4 [125 Atl. 308]; *State ex rel. Elliott* v. *Kelly,* 154 Wis. 482 [143 N. W. 153]; 46 Cor. Jur. 1018, 1019; McQuillan on Municipal Corporations, 2d ed., vol. XI, p. 225; 21 Cal. Jur. 952, 953.) █ It is a basic principle inherent in the American system of representative government, as declared in article I, section 2 of our state Constitution, that "all political power is inherent in the people. Government is instituted for the protection, security and benefit of the people, and they have the right to alter or reform the same whenever the public good may require it." From the foregoing, it follows that the legislative power of the municipality resides in the people thereof. By writing into the charter initiative and referendum laws, the people of the city have simply withdrawn from the legislative body and reserved to themselves the right to exercise a part of their inherent political power. We must therefore look to the provisions of the city charter to ascertain whether therein the people have excluded from the operation of the initiative the determination and fixing of salaries for members of the city police department.

The initiative ordinance here in question does more than fix salaries of members of the police department. It establishes a scale of minimum salaries. Manifestly the ordinance sought to declare a public policy or purpose, to the effect that in the police department, concededly a vital arm of the public service, and the medium through which personal and property rights are protected, the salaries paid the members of such department must not be fixed below a certain minimum, lest thereby the public interest and welfare might be adversely affected. That acts which constitute a declaration of public purpose and ways and means for the accomplishment thereof, are generally classified as calling for the exercise of legislative powers, was the holding in *McKevitt* v. *City of Sacramento,* 55 Cal. App. 117 [203 Pac. 132].

Article XIII, section 78, of the Alhambra city charter reads: "The commission, subject to the provisions of this charter, shall have power to organize the police division and change the same and make all necessary rules and regulations for its efficient administration, ordain penalties for violation thereof, establish the number of its members *and the amount of their salaries,* including that of the chief of police, and do all other acts necessary to the efficient equipment and operation of the police division of the city."

Article VII, section 60, of the same charter contains the following language: "The qualified electors of the city shall have power through the initiative or otherwise, as provided by this chapter and the general laws of the state, to enact appropriate legislation to carry out and enforce *any of the general powers of the city or any of the specified powers of the commission.*"

When, therefore, the people phrased the foregoing sections pertaining to these powers in such broad, general and unambiguous language, the conclusion seems inevitable that thereby it was intended that legislation on every municipal subject should, unless expressly or by clear and necessary implication excluded by other sections, be subject to initiative action through the adoption of ordinances by the people. After all, the people through their charter have a right to vest in the voters of the city the right and power to deal through initiative action with any matter within the realm of local affairs or municipal business, whether strictly legislative or not, as that term is generally used (*Hopping* v. *City of Richmond,*

170 Cal. 605 [150 Pac. 977]); and as heretofore noted, the consensus of authority is to the effect that the fixing of salaries of public officers is a legislative function. Certainly no other incident of municipal government engages more legislative attention.

Appellants earnestly contend that the charter of the City of Alhambra provides that the city manager shall be the administrative head of the city government and that he shall appoint the chief of police and all members of the police department and fix the compensation of the members of such department, with the exception of the chief thereof. In support of these claims we are referred to certain provisions contained in the city charter, the first of which is section 73, article XII, which reads: "The office of city manager of the city of Alhambra is hereby created, and he shall be the administrative head of the city government and shall have supervision and control of and be head of all of the departments of the city and be responsible for their efficient administration, except as by this charter or otherwise provided." Also section 75 of the same article (as amended, Stats. 1927, p. 2055), which reads as follows:

"*Except as otherwise provided by this charter,* the powers and duties of the city manager shall be:

" . . .

"2. To appoint all chief appointive officials, subject to the approval of such appointments by the commission.

"3. To appoint all subordinates and employees in all departments, *not otherwise provided for in this charter,* and to determine their duties and fix their compensation. All such appointments and the fixing of compensation shall be subject to the approval of the commission and shall not be effective without such approval. To remove any appointee and no removal shall be made without his consent.

"4. To have supervision and control of all departments, boards and divisions created herein or that may be hereafter created by the commission, *except as otherwise provided by this charter.* . . . "

It should be noted, however, that in adopting the foregoing sections of the charter creating the office of city manager and defining the scope of the powers and duties of that office, the people used the explicit and significant language in the first-quoted section, "Except as by this charter or otherwise pro-

vided''; while in the last-quoted section appears the following: ''Except as otherwise provided by this charter.'' In subdivision 4 of section 75 the city manager is vested with control of all boards, departments and divisions ''except as otherwise provided by this charter''. In addition to the sections previously cited herein, we find positive and unequivocal language which impels the conclusion that in adopting their charter the citizens of Alhambra clearly intended to vest exclusively in the city commission power to organize the police department, determine its personnel and fix the salaries of the members thereof. We refer to sections 76 and 78 of article XIII, the first of which provides as follows: ''76. Police division of Alhambra shall consist of a chief of police and such officers and policemen as the commission shall, from time to time, fix and determine''; and the latter of which is hereinbefore set forth.

From the foregoing it is at once apparent that the charter of the City of Alhambra has reserved to the electors the broadest possible powers in the matter of initiative legislation; powers so extensive as to permit adoption by the voters of any ordinance which the commission might enact (sec. 176, art. XXIII), as well as to carry out and enforce any of the general powers of the city or any of the specified powers of the commission. The power to fix salaries of its policemen is included both in the general powers of the city and is reserved among the specified powers of the commission. Also, the ordinance here under consideration qualifies as an act declaratory of a public purpose and the ways and means of its accomplishment, thereby bringing it within the purview of the legislative prerogative. The initiative ordinance in question is therefore a valid exercise of the initiative powers vested in the electorate of the city.

The judgment is affirmed.

York, P. J., and Doran, J., concurred.