[L. A. No. 20430.   In Bank.   Apr. 2, 1948.]

ROY C. HUNT et al., Petitioners, v. MAYOR AND COUNCIL OF THE CITY OF RIVERSIDE et al., Respondents.

620

Best, Best, Gabbert & Krieger for Petitioners.

Miguel Estudillo, City Attorney, and Albert H. Ford, Deputy City Attorney, for Respondents.

SCHAUER, J.—Petitioners seek the issuance of a peremptory writ of mandate to compel respondents, who are the mayor and the council of the city of Riverside, to submit to a referendum vote of the electors of the city a sales tax ordinance adopted by the council on May 13, 1947, and approved by the mayor on May 23, 1947. We have concluded that the ordinance in question is not made subject to referendum under the provisions of either the Constitution of this state (art. IV, § 1) or the Riverside city charter, and that the writ must be denied.

By the ordinance a license tax "For the privilege of selling tangible personal property at retail" is imposed "upon all retailers at the rate of one per cent (1%) of the gross receipts of any retailer from the sale of all tangible personal property sold at retail in the City of Riverside . . . on or after July 1, 1947." In its other provisions the ordinance is largely patterned after the California "Sales and Use Tax Law," found in part 1 of division 2 of the Revenue and Taxation Code. On May 26, 1947, petitioners filed a referendum petition with the city clerk, requesting that the ordinance be submitted to the vote of the electors. On June 6, 1947, the city clerk found the number of signatures on the petition to

be insufficient. (See Charter, art. XXI, § 233.) On June 18, 1947, an amended petition was filed which the city clerk on June 23, 1947, certified to contain the requisite number of signatures of qualified and registered electors of the city. The city attorney by written opinion advised respondents, the mayor and city council, that the ordinance was not subject to referendum, and respondents refused to submit it to a vote of the electors. Thereafter, on July 9, 1947, petitioners instituted this mandate proceeding.

Whether respondents are correct in refusing to submit the ordinance to a vote of the electors depends primarily upon whether the referendum power reserved to the people in either the California Constitution or the charter of the city of Riverside, extends to such an ordinance. As a restriction upon the legislative powers exercised by the state Legislature and by the legislative bodies of counties and cities, the people of this state, by provision in section 1 of article IV of the state Constitution, have reserved to themselves the power known as the referendum. (See *Dwyer* v. *City Council* (1927), 200 Cal. 505, 513 [253 P. 932]; *Ley* v. *Dominguez* (1931), 212 Cal. 587, 593 [299 P. 713].) That section, so far as here material, reads as follows: ''The second power reserved to the people shall be known as the *referendum*. No act passed by the Legislature shall go into effect until ninety days after the final adjournment of the session of the Legislature which passed such act, except acts . . . providing for tax levies or appropriations for the usual current expenses of the State, and urgency measures . . . Upon the presentation to the Secretary of State within ninety days after the final adjournment of the Legislature of a petition . . . signed by qualified electors equal in number to five per cent of all the votes cast for . . . Governor at the last preceding general election at which a Governor was elected, asking that any act or section or part of any act of the Legislature be submitted to the electors for their approval or rejection, the Secretary of State shall submit to the electors for their approval or rejection, such act, or section or part of such act . . . and no such act or section or part of such act shall go into effect until and unless approved by a majority of the qualified electors . . . The . . . referendum powers of the people are hereby further reserved to the electors of each county . . . city and town of the State to be exercised under such pro-

cedure as may be provided by law . . . Nothing contained in this section shall be construed as affecting or limiting the present or future powers of cities or cities and counties having charters adopted under the provisions of section eight of article eleven of this Constitution . . . This section is self-executing, but legislation may be enacted to facilitate its operation, but in no way limiting or restricting either the provisions of this section or the powers herein reserved.'' (See also art. IV, § 34.)

Riverside is a city having a charter adopted under the provisions of section 8 of article XI of the Constitution. (See Stats. 1907, p. 1277; 1929, p. 2102; 1935, p. 2307.) Section 233, article XXI, of the Riverside charter states that ''No action providing for the sale or lease of any city property exceeding one thousand dollars in value and no ordinance passed by the council (except when otherwise required by the general laws of the state or by the provisions of this charter, respecting street improvements and except an ordinance for the immediate preservation of the public peace, health or safety, which contains a statement of its urgency . . . ), and no action made subject to the referendum by this charter shall go into effect before thirty days from the time of its approval by the mayor or the time of its passage over his veto . . . and if during said thirty days, a [sufficient referendum] petition . . . be presented to the council, the same shall thereupon be suspended from going into operation and it shall be the duty of the council to reconsider such ordinance and if the same is not entirely repealed, the council shall submit the ordinance proposed, to the vote of the electors of the city . . .''

█ It is established that where the right of referendum is reserved by city charter provision, ''The declaration of the constitution that its provisions do not affect or limit the referendum power reserved to the people of any city by its charter, does not limit the constitutional reservation nor enlarge those reserved by such charter. The two reservations are thereby made independent of each other. The constitutional reservation goes to the full extent expressed by its language. If the charter differs from the constitution in any respect it does not thereby diminish the power reserved by the constitution. On the other hand, if the powers reserved by the charter exceed those reserved in the constitution the effect of the charter would be to give

to the people the additional powers there described.'' (*Hopping* v. *Council of the City of Richmond* (1915), 170 Cal. 605, 610-611 [150 P. 977]; see also *Brown* v. *Boyd* (1939), 33 Cal.App.2d 416, 420-421 [91 P.2d 926], and cases there cited; *Spencer* v. *City of Alhambra* (1941), 44 Cal.App.2d 75, 77 [111 P.2d 910].) In other words, as between the provisions of the Constitution and the provisions of a city charter, those which reserve the greater or more extensive referendum power in the people will govern. It is, therefore, necessary to here determine whether the people have reserved to themselves under either the Constitution or the charter the power of referendum over the sales tax ordinance which gave rise to this proceeding.

1. *The Ordinance is Excepted from the Referendum Provisions of the Constitution.*

■    Respondents allege in their answer to the petition for mandate that the sales tax ordinance ''was adopted by the Council, and approved by the Mayor of the City of River-side, to provide income and revenue which is necessary to pay the usual and current expenses of conducting the municipal government of the City.'' Petitioners have not controverted the allegation and it will therefore be accepted as true. (See Code Civ. Proc., § 1091; *Ertman* v. *Municipal Court* (1945), 68 Cal.App.2d 143, 150 [155 P.2d 908, 156 P.2d 940].) Moreover, the ordinance itself contains no provision appropriating the proceeds of the tax levy to any selected municipal purpose.

■    As we have already seen, ''acts . . . providing for tax levies or appropriations for the usual current expenses of the State'' are expressly excepted from the operation of the referendum provisions of the Constitution. The California Retail Sales Tax Act (Stats. 1933, p. 2599; Deering's Gen. Laws, 1933 Supp., p. 2360, Act 8493), now known as the Sales and Use Tax Law (Rev. & Tax. Code, div. 2, pt. 1), was adopted by the Legislature as ''a tax levy for the usual current expenses of the state'' to ''take effect immediately.'' It was held in *Roth Drug, Inc.* v. *Johnson* (1936), 13 Cal. App.2d 720, 729 [57 P.2d 1022], that the act was excluded from those provisions of the Constitution which require a 90-day waiting period during which referendum petitions may be filed, and that the Legislature was within its powers in declaring the act immediately effective. We are of the view that referendum power over the city ordinance levying

624

a sales tax for the purpose of meeting the usual and current expenses of the city is similarly not reserved to the people by the referendum provisions of the Constitution.

■  2.  *The Ordinance is Excepted from the Referendum Provisions of the City Charter.*

Article III of the charter of the city of Riverside is entitled "Legislative Department." In section 7 of that article it is provided that "The legislative power of the city is hereby vested in a mayor and council consisting of seven members . . ." Section 16 provides that "The mayor and council of said city shall have power: . . . 17. To levy and collect *taxes on all property,* real or personal within the city; 18. *To license for the purposes of revenue* and regulation, *all and every kind of business* authorized by law and transacted and carried on in said city . . .; to fix the rates of *license tax* upon the same and to provide for the collection of the same by suit or otherwise; . . . 21. To manage and control the city's finances . . ." (Italics added.)

Article V of the charter, entitled "Executive Department," provides that (§ 105) : "The city treasurer shall be ex-officio tax collector and as such . . . shall receive and collect *all city taxes, general* and *special* and other branches of the city's revenue not otherwise provided for by law, by this charter, or by ordinance . . . [§ 106] As long as and during such period as the *regular city taxes* may be assessed and collected by the county officers of Riverside County as herein provided for in Article XV [entitled "Revenue and Taxation"], Section 209, the duties of the treasurer as such ex-officio tax collector shall be deemed inoperative. Unless otherwise provided by ordinance or by law the treasurer shall collect all special assessments, liens or other *special taxes.*" (Italics added.) Section 108 gives the mayor and council power to "provide for the duties of tax collector" in case the office is abolished or becomes inoperative.

Section 168 of article XI, entitled, "Judicial Department," states that the city police court shall have jurisdiction over actions and proceedings "for the collection of any *license tax* required by any ordinance" except where because of the amount involved the state Constitution gives jurisdiction to other courts.  (Italics added.)

Charter article XV, entitled "Revenue and Taxation," provides as follows (all italics have been added) :

"Section 202.  All taxes, licenses, fines, penalties and all moneys received from any source shall constitute the revenue

of the city and shall be collected and paid into the city treasury.''

Section 203 requires the ''several heads of each department, office, board and commission'' to submit to the council annually an estimate of expenditure for the ensuing fiscal year, with duplicates to the auditor.

Section 204 requires the auditor to submit annually to the mayor and council ''an estimate of the probable financial necessities of the municipal government for the fiscal year . . . The estimate shall also show what amount of income and revenue is likely to be collected from fines, licenses and all *other sources of revenue,* exclusive of *taxes upon property,* and what amount will probably be required to be levied and raised by *taxation* in order to meet the necessities . . . for such fiscal year.

''Section 205. The Council shall . . . fix by ordinance the amount of money necessary to be raised by *taxation upon the taxable property* of the city, as . . . revenue . . . of such city for the current fiscal year . . . The council shall . . . fix said amount on the first Tuesday in August in any year when provision has been made . . . for the assessment and collection of the *city taxes* by'' county officers.

''Section 206. During such time as the assessment and collection of city taxes shall be made by the . . . officers of said city, the council shall [annually] . . . sit as the board of equalization . . .

''Section 207. The mayor and council shall . . . unless the *city taxes* are assessed and collected [by county officers] . . . provide by ordinance a system for the assessment, levy and collection of *all city taxes* and for the sale of property for *delinquent taxes,* which system shall conform, as nearly as the circumstances . . . permit, to [that] . . . of this state with reference to . . . *state* and *county taxes* and sale of property for delinquent taxes . . . *All taxes assessed* . . . shall constitute liens on the property assessed . . .

''Section 208. If there shall be no ordinance in force availing the city of the privilege of having *its taxes* assessed and collected by the officers of the county, the city clerk shall be ex-officio tax collector. . .''

Section 209. If state law provides ''for the assessment and collection of *city taxes* by county officers'' at the option of the city, then the mayor and council shall annually pass an ordinance taking advantage of and in conformity with

the state law "in order to avail the city of the privilege of having *its taxes* assessed and collected by such county officers."

Section 210. In any year when "provision has been made by ordinance for the assessment and collection of the *city taxes* by" county officers, "the council shall fix the *rate of taxes* for such year" and transmit it to the county auditor.

"Section 211. . . . Ordinances providing for the levying of *the taxes mentioned in this article* shall not be subject to the provisions of the referendum referred to in Section 233, of Article XXI.

"The council shall not . . . levy a *general tax* greater than one dollar and thirty-five cents on each one hundred dollars of the assessed valuation of all property within said city. This limit is exclusive of all taxes for the payment of the principal and interest of the bonded indebtedness of the city, all district taxes, *special taxes,* special assessments and all taxes for library or school purposes . . ."

Petitioners urge that the only "taxes mentioned" in article XV, ordinances levying which are thereby, pursuant to the provisions of section 211, excepted from the referendum, are property taxes; i. e., they ask us to construe section 211 as though it read "Ordinances providing for the levying of *property taxes* shall not be subject to . . . referendum." Respondents emphasize the fact that section 211 actually reads "*Ordinances* providing for the levying of *the taxes mentioned in this article* shall not be subject," etc.; it is pointed out that both the word "ordinances," and the phrase "the taxes mentioned in this article," are plural and inclusive in the scope of their reference; further, respondents point to the declaration of section 202 that "*All taxes, licenses* . . . and all moneys received from any source shall constitute the revenue of the city and shall be collected and paid into the city treasury," as indubitably supporting their position that a city sales tax is a tax "mentioned" in article XV and that the ordinance levying it is therefore not subject to referendum. (Italics added.) After studying the charter as a whole, and in particular those provisions quoted or summarized hereinabove, we are impelled to the conclusion that the learned city attorney was correct in his advice to the respondents and that their position here is sound.

As a verb, "mention" is defined in Webster's New International Dictionary, 2d edition (1943), as "To make mention of; to refer to . . . casually; to specify, esp. by name; to name,"

and as a noun the word is employed to indicate "a speaking or notice, esp. in a brief or cursory manner; a specification, usually by name; casual introduction into speech or writing; naming, esp. incidentally."

It is a judicially accepted theory of the law that a sales tax is imposed as a license or "privilege of transacting the business" tax (see *People* v. *Herbert's of Los Angeles, Inc.* (1935), 3 Cal.App.2d 482, 484 [39 P.2d 829]; *Roth Drug, Inc.* v. *Johnson* (1936), *supra,* 13 Cal.App.2d 720, 730, 736). Such a tax is expressly authorized by the terms of section 16 (18) of the city charter and, as already noted, was here enacted to provide revenue to pay usual and current city expenses. Also, in section 168, jurisdiction of court actions for collection of license taxes is treated. It is thus indisputable that the charter contemplates the levy of just such a tax as is here in controversy; and it seems apparent that it is included among the "taxes mentioned" in article XV, by the comprehensive reference in section 202 of that article to "all taxes, licenses," etc. To phrase the same proposition differently, manifestly the ordinance provides for a license which is a tax; it seems equally manifest that the words "All taxes, licenses . . . and all moneys received" etc., constitute a "mention" of that tax. Moreover, although the only taxes for which detailed provision is made in article XV are ad valorem taxes on property, a study of the article in its entirety discloses that it is contemplated and provided therein that the rate of property taxes shall be fixed for each fiscal year only after the probable revenue from sources other than property taxes, but including all other taxes, has been ascertained. Thus, by section 204, the city auditor is given the duty of annually preparing an estimate of funds needed for the next fiscal year and an estimate of total expected revenue, including income from license taxes but excluding that from property taxes, and an estimate of the amount required to be raised by "taxation in order to meet the necessities" of the city. Whether the word "taxation" as used in the phrase last quoted be taken to refer to property taxes alone, or whether it is considered as either including on the one hand, or requiring a separate estimate of on the other, the sum required to be raised by other methods of taxation in case the council is averse to imposing the full maximum property levy (see § 211, *ante*) or in case such maximum will fall short of providing adequate funds, the "mention" of license taxes in section 204 cannot realistically and conscionably be

ruled out. The fact that the phrases "city taxes," "delinquent taxes," "its taxes," and "general taxes," as used in sections 205 through 211 have to do with the assessment and collection of property taxes is but consistent with the employment of the same or similar expressions in sections 105, 106, and 209, in which are discussed "city taxes, general and special," "regular city taxes," and "special taxes," and in no sense obliterates the distinct mention of other taxes, including license or privilege taxes, in other sections of article XV. The very fact that specifically descriptive language is used in some of the charter provisions suggests that similarly precise language would have been used to limit the types of tax ordinances not subject to referendum if the freeholders had so intended.

It is also argued by respondents that the "special taxes" to which reference is made in the last section (number 211) of article XV may be taken to include the sales tax levy. Whatever may be the true encompassment of that phrase we need not here determine because we think the mention of the sales tax in prior sections of the article effectively excludes from the charter referendum provisions the ordinance by which it was imposed.

█ In reaching the conclusion set forth above we have had in mind the principle, relied upon by petitioners, that referendum provisions of the Constitution and of charters and statutes should, as a general rule, be liberally construed in favor of the reserved power. (See *Ley* v. *Dominguez* (1931), *supra*, 212 Cal. 587, 593, 595; *McClure* v. *Nye* (1913), 22 Cal.App. 248, 251 [133 P. 1145]; *Laam* v. *McLaren* (1915), 28 Cal.App. 632, 638 [153 P. 985]; *Whittemore* v. *Seydel**  (1946), 74 Cal.App.2d 109, 115 [168 P.2d 212]; *Dye* v. *Council of the City of Compton** (1947), 80 Cal.App.2d 486, 490 [182 P.2d 623].) As opposed to that principle, however, "in examining and ascertaining the intention of the people with respect to the scope and nature of those [reserved, referendum] powers, it is proper and important to consider what the consequences of applying it to a particular act of legislation would be, and if upon such consideration it be found that by so applying it the inevitable effect would be greatly to

*Petitioners concede that in neither the Whittemore nor the Dye case was the issue raised that the respective license tax ordinances involved were not subject to referendum because levied for usual and ordinary city expenses, and, further, that the points here involved were not decided in either of those cases.

impair or wholly destroy the efficacy of some other governmental power, the practical application of which is essential and, perhaps, as in the case of the power to compel the improvement of streets, indispensable, to the convenience, comfort, and well-being of the inhabitants of certain legally established districts or subdivisions of the state or of the whole state, then in such case the courts may and should assume that the people intended no such result to flow from the application of those powers and that they do not so apply." (*Chase* v. *Kalber* (1915), 28 Cal.App. 561, 569-570 [153 P. 397].) Thus in the cited case it was held that the referendum powers of the people were not reserved as to a resolution of a town board of trustees establishing the grades of certain streets and avenues. Again, in *State of Missouri, etc.* v. *Regan* (1927), 317 Mo. 1216 [298 S.W. 747, 55 A.L.R. 773, 778], the Missouri Supreme Court in determining whether an ordinance imposing a sales tax on cigarettes was subject to the referendum under the Kansas City charter, said: "While we have no right to construe a law by our view of its expediency, we can take that feature into consideration in attempting to ascertain what was in the legislative mind. Kansas City would be in severe financial straits if every occupation tax could be held up by referendum . . . This ordinance may be a bad measure, but it stands on the same footing as a good one. A reasonable construction is that the framers of the charter meant to have such tax measures subject to the emergency provision [not subject to referendum]."

Here, before the city council can determine the amount of annual revenue which must or should be raised by property taxes to help meet the needs of the city and before the property tax rate can be fixed, the estimated revenue from all other sources, including license taxes, must be known. As indicated above, we are of the view that the charter in its present form cannot reasonably be construed as contemplating that the council, in making up the annual city budget and in levying permissible taxes to assist in providing necessary city revenue, should be hampered by the uncertainty and delay of referendum proceedings. It may be observed, in this connection, however, that if the people actually wish to make current revenue taxes of any type or types subject to referendum the charter may be amended to that end, and further, it would seem that the sales tax levy may

still be voted upon by the people under present initiative provisions of the charter.

Because of our conclusion that the ordinance levying the sales tax is not subject to the referendum provisions of the charter, it is unnecessary to consider contentions of respondents that the attempted referendum petition is insufficient in various respects.

The alternative writ heretofore issued is discharged, and the peremptory writ is denied.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Traynor, J., and Spence, J., concurred.