[Civ. No. 16698. First Dist., Div. One. June 18, 1956.]

WALTER SIMAS, Respondent, v. THE CITY OF OAKLAND et al., Appellants.

John W. Collier, City Attorney, and Robert E. Nisbet, Deputy City Attorney, for Appellants.

Healy & Walcom, Healy & Martin and Franklin A. Dill for Respondent.

WOOD (Fred B.), J. The sole question is whether or not the Oakland City Council had power by resolution to submit to a referendum vote at the ensuing general municipal election, an initiative ordinance which it had just passed.

The initiative provisions of the charter appear in Article XXI, comprising sections 162-176. Section 164 provides that if the initiative petition is signed by electors equal in number to 15 per cent of the vote cast for all candidates for mayor at the last preceding general municipal election and contains a request that the proposed ordinance be submitted forthwith to the vote of the people at a special election, then either: "(a) The Council shall pass said ordinance without alteration within twenty days after the attachment of the Clerk's Certificate of Sufficiency to the accompanying petition; or, (b) Within twenty-five days after the Clerk shall have attached to the petition accompanying such ordinance his Certificate of Sufficiency, the Council shall proceed to call a special election at which such ordinance, without alteration, shall be submitted to the vote of the electors; unless some General or Special Municipal Election occurs not earlier than thirty (30) days and not later than ninety (90) days after the City Clerk shall have attached such Certificate of Sufficiency, in which latter event said measure shall be voted on at such Special or General Municipal Election."

The initiative petition in question met the specifications of section 164 and on July 15, 1954, the council passed the ordinance pursuant to the power vested in it by subdivision (a) of the section. At that moment, it would seem, the ordinance took effect and became operative as a law of the city.

Thereafter and on the same day the council adopted a resolution which recited that great expense would be saved by submitting this ordinance at the next ensuing general municipal

election (to be held in April, 1955) instead of calling and holding a special election, and purported to submit the ordinance "to a 'referendum' vote at the next General Municipal Election in accordance with the provisions of Article XXII" of the charter.

This was clearly in contravention of the provisions of section 164, which conferred *in the alternative* the power to pass or to submit the ordinance forthwith to the electors, and in the latter case at a special election. In the instant case no general or special election occurred between 30 and 90 days after the city clerk certified as to the sufficiency of the initiative petition.

The mandatory and limiting character of the provisions of section 164 is emphasized by section 165 of the same article, which provides that if an initiative petition is signed by electors equal to 5 per cent of the vote cast for candidates for mayor and contains a request that the ordinance be submitted at a general municipal election, it shall be so submitted at such election occurring after 20 days from the date of the clerk's certification that the petition is sufficient, unless the council passes the ordinance without alteration prior to the time of the calling of such election. Especially so, in view of the following provisions of section 166 of the same article: "No Initiative petition requesting the submission of an ordinance at a Special Municipal Election, and having an insufficient number of signatures to require such Special Election but having the required number for submission of said measure at a General Municipal Election, shall by virtue thereof be sufficient to require the submission of such ordinance at a General Municipal Election. No Initiative petition requesting the submission of an ordinance at a General Municipal Election and having a sufficient number of signatures to have required the submission of said ordinance at a Special Municipal Election, shall, by virtue thereof, be sufficient to require the calling of a Special Municipal Election."

The city invoked the purported sanction of section 179 of the charter for the action which it took, a section which declares: "Any ordinance which the Council is empowered to pass may be submitted by an affirmative vote of five (5) of its members at a General Municipal Election only, subject to the provisions of this Article so far as applicable."

This section is a part of article XXII, which deals with the referendum. The first section of this article (§ 178) authorizes electors equal in number to 10 per cent of the mayoralty

vote to petition for the referendum of certain kinds of ordinances, such as an ordinance passed by the council granting a franchise, permit or privilege to operate a public utility or authorizing the acquisition, transfer or permission to use real property (including lands held in trust by the city) or authorizing the lease or permission to use a portion of any public conduit or tunnel.* No such ordinance goes into effect until the expiration of 60 days "from the date it becomes final," within which period a referendum petition may be filed. If a sufficient petition is timely filed, such an ordinance does not go into effect "until approved by a majority of the voters voting thereon . . ."

The obvious purpose of the following section (§ 179) would seem to be simply that of supplementing this referendum by petition procedure by authorizing the city council upon its own motion to submit to a referendum an ordinance on any subject, not limited to the subjects specified in section 178. This has reference, logically, to the general legislative powers of the council, described by subject matter and conferred, principally, by the provisions of article IX, sections 49 to 51, of the charter; not a reference to the power conferred by section 164 to pass an initiative ordinance in lieu of submitting it to a vote of the electors and as a part of the initiative process.

The city invokes *Whitmore* v. *Carr*, 2 Cal.App.2d 590 [38 P.2d 802], as holding that an ordinance must be adopted prior to a reference thereof to a vote of the electors. From this the city would conclude that the correct procedure under section 179 is for the council to adopt the ordinance and then by resolution submit it to the voters. That conclusion does not necessarily follow, as we read the decision. There, the council merely drafted an ordinance and read it twice but

---

*We, of course, are not here concerned with the question whether the Constitution may have reserved to the electors of the city a power of referendum that is broader in scope. (See *Hunt* v. *Mayor & Council of Riverside*, 31 Cal.2d 619 [191 P.2d 426].)

The initiative power of the electors of the city is not limited, as to subject matter, by the charter.

"The electors of the City shall have power through the initiative and otherwise, as provided by this Charter, to enact appropriate legislation to carry out and enforce any of the above general powers of the City or any of the specified powers of the Council." (§ 50 of the Oakland Charter.)

"The qualified electors of the City shall have power to propose by petition, and to adopt at the polls any ordinance which may be enacted under this Charter." (§ 162 of the charter.)

did not adopt it; then purported by a mere resolution to submit it to the voters for adoption or rejection. That, the court appropriately held, was not the exercise of the referendum power sanctioned by section 179. It does not necessarily follow that in so holding the court in the Whitmore case meant that the council could adopt an ordinance, let it take effect as law, and then at some later time (however short or long the interval) submit it to the voters by a mere resolution. During that interval the provisions of subdivision (10) of section 46 of the charter would seem to come into play: "No ordinance shall be amended or changed except by ordinance." It would seem a simple matter, instead, when enacting an ordinance in the exercise of its general powers, for the council to include in the ordinance a suitable provision for its submission to a referendum vote if five of its members so desire, under the sanction of section 179. We would add that the Whitmore case did not involve the initiative process. It does not appear that the ordinance had been presented to the council by an initiative petition.

The city directs attention to section 172 of the charter which states that "No ordinance approved by the electorate under the provisions of this Article shall be amended or repealed except by vote of the electorate unless such ordinance shall otherwise provide." The city argues that because this inhibition is limited to ordinances "approved by the electorate" there is no inhibition against amendment or repeal by the council of an initiative ordinance passed by it without alteration pursuant to the sanction of subdivision (a) of section 164, in view of the city's claim that otherwise there would be no way to amend or repeal except by means of an initiative petition. This statement is not necessarily correct. There may be an implied power given the council to adopt an ordinance amending or repealing any initiative ordinance if there be included in the amendatory or repealing ordinance a provision making it effective subject to and only upon approval by the voters at a appropriate election, particularly in view of the declaration in section 176 that the "Council shall, by ordinance, make such further regulations as may be necessary to carry out the provisions of this Article [on the initiative power and process] and to adapt the provisions of Article III [governing elections] thereto." However, these questions are not here involved. The council did not adopt an amendatory or repealing ordinance. It merely adopted a reso-

lution purporting to submit to a referendum vote an initiative ordinance it had enacted into law.

We conclude that the trial court correctly held that the ordinance is in effect and the resolution is void.

The judgment is affirmed.

Peters, P. J., and Bray, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied August 16, 1956. Traynor, J., was of the opinion that the petition should be granted.