[Civ. No. 310. Fifth Dist. Oct. 17, 1963.]

JOSEPH O. MUELLER, Petitioner, v. J. L. BROWN, as County Clerk, etc., Respondent; FRESNO CITY AND COUNTY COMMITTEE TO SAVE THE COURT-HOUSE et al., Real Parties in Interest.

Donald R. Franson for Petitioner.

Robert M. Wash, County Counsel, and Max E. Robinson, Deputy County Counsel, for Respondent.

Vergil L. Gerard for Real Parties in Interest.

STONE, Acting P. J.—This petition for writ of mandate to compel respondent to omit a proposed initiative ordinance from the ballot to be used at the special election to be held November 5, 1963, arose out of the following sequence of events: In 1874 Fresno County, by grant deed, acquired a 14-acre parcel of land in what is now the center of the City of Fresno. Although the deed contained the provision ''to be used for the erection of a courthouse thereon and for other county purposes,'' the county acquired title in fee. In 1875 the county constructed a courthouse on this site, to which two wings were added in 1893. The central portion of the courthouse was repaired due to a fire in 1895, and there have been no structural alterations since then.

In 1893 a building was erected adjacent to the courthouse, which was used as a county jail until 1959, when it was demolished and the land upon which it stood was converted to a parking area for county vehicles. A hall of records was erected on one side of the courthouse in 1937, and in 1942 a sheriff's building and county jail was constructed on the opposite side of the courthouse. Between 1950 and 1960 annexes were added to these buildings.

The population in Fresno County in 1800 was 9,478; in 1900, 37,862; in 1920, 128,779; in 1940, 178,574; in 1960, 365,945; and it is estimated that the population in 1970 will be 494,164, and in 1980, 655,877. Fresno County's first superior court was established in 1879 and departments were added as follows: second in 1887, third in 1893, fourth in 1921, fifth and sixth in 1949, and a seventh in 1963. In 1952 the first Municipal Court for the Fresno Judicial District was established with four departments, and in 1963 a fifth department was added.

In 1950 the board of supervisors called for bids for remodeling the courthouse, which bids ranged from $697,000 to $802,500. Because of an earthquake in 1952, the board requested a structural engineering survey of the courthouse, which resulted in a report declaring that the building was not a safe earthquake-resistant structure. In 1959 the Fire Marshal of the City of Fresno made an inspection to deter-

mine whether the courthouse was a safe structure for public use, and reported that to correct existing fire hazards would cost an estimated $844,250. The Fresno County Public Works Department filed an engineering report in February 1962, estimating the cost of functional rehabilitation of the courthouse to be $700,000, this in addition to the correction of existing fire hazards, or a total rehabilitation cost of $1,544,250.

The board decided in favor of a new courthouse on the present courthouse site, and on October 31, 1962, a formal application was filed by the county with the Federal House and Home Finance Agency requesting a grant of $3,526,500 to aid in financing its construction. In November 1962 the board called for architectural plans and specifications for providing a courthouse. Plans were submitted for alternate schemes: one, designated 2-E, centered on remodeling the existing courthouse; the other, scheme 2-N, provided for demolition of the old courthouse and construction of a new one on the same site. The estimated cost of scheme 2-E to rebuild the present courthouse, was $8,384,733. The board decided upon scheme 2-N, providing for a new courthouse building, new sheriff's building, new administration building, and demolition of the existing courthouse, at an estimated cost of $6,672,351, and declared that plan 2-E utilizing the existing building exceeded the existing budget.

After a public hearing and consideration, the board on Febrary 5, 1963, approved scheme 2-N by resolution, although it later amended the plan by omitting a proposed administration building. As a result of this deletion, the board authorized the county to amend and reduce the application for a federal grant from $3,500,000 to $1,949,300.

In August 1963 the county received a federal grant contract and the board, by resolution, duly adopted the contract on August 12. One of the conditions of this grant offer was that the county should initiate on-site employment within 120 days from the date of offer. By September 15, 1963, the county had made progress payments to the architects pursuant to contracts, in the sum of $156,737.15.

In February 1963 the "Fresno City and County Committee to Save the Courthouse" was organized as an unincorporated association consisting of 20 members. The committee complied with the provisions of the Elections Code pertaining to circulation and publication of a referendum or initiative proceeding, and on September 3, 1963, an initiative peti-

tion was submitted to respondent. The board of supervisors, by resolution and as required by law, set November 5, 1963, as the time for a special election on said petition. The petition for writ of mandate now before us, followed.

Respondent and real parties in interest filed general demurrers alleging that the petition for writ of mandate fails to allege facts sufficient to constitute a cause of action. For reasons that will hereafter become apparent, the demurrers are overruled.

At the outset, it is necessary to define the issues before the court, since the answer of real parties in interest questions whether there is a need for additional courtroom facilities, whether the action of the board of supervisors was wise, and whether the board violated certain county ordinances relative to parks and zoning in approving a plan to construct a new courthouse on the present courthouse site. They also question the motives of petitioner and his attorney in bringing the proceeding. Petitioner moved to strike from the answer the allegations raising these issues. The motion must be granted. None of these matters is properly before the court, since the proceeding is not one to enjoin or prohibit the board from going forward with its ordinance to build. The petition for writ of mandate is directed solely against the initiative measure sought to be brought to a vote, which initiative measure in no way questions the previous acts of the board of supervisors. The proposed measure reads as follows:

## "REFERENDUM

"The undersigned registered voters of Fresno County, State of California, do hereby affirm our intent to have enacted, in the manner prescribed by the California Elections Code, the following Ordinance:

"THE PEOPLE OF THE COUNTY OF FRESNO, DO ORDAIN AS FOLLOWS: THAT THE EXISTING COUNTY LAND AREA LOCATED WITHIN THE CITY OF FRESNO, BOUNDED BY FRESNO STREET, VAN NESS AVENUE, TULARE STREET AND M STREET, COMMONLY KNOWN AS THE COURTHOUSE PARK, SHALL HEREAFTER BE PRESERVED FOR USE AS A PARK AREA ONLY: THAT FURTHER CONSTRUCTION OF BUILDINGS, ADDITIONAL PARKING AREAS OR ENCROACHMENT OF ANY KIND BE, AND IS HEREBY, PERMANENTLY PROHIBITED: THAT THE BUILDING COMMONLY KNOWN AS THE FRESNO

COUNTY COURTHOUSE, ALREADY OCCUPYING SPACE WITHIN THE PARK, BE PERMANENTLY MAINTAINED AND PRESERVED FOR CONTINUED USAGE BY VARIOUS PUBLIC AGENCIES."

Although entitled "Referendum," all parties agree that it is, in substance, an initiative proposal to enact a county ordinance.

■ Manifestly, the measure neither mentions nor attacks the validity of any action by the board of supervisors. It simply proposes a legislative enactment to create a permanent park and to require permanent maintenance and use of the present courthouse building. It is evident from the very wording of the proposed initiative that its validity cannot rest upon the regularity or irregularity of any prior action of the board. This is so even though the measure would, if valid and enacted, nullify any prior board action with which it is in conflict. Unlike the proposed initiative ordinance in *Simpson* v. *Hite*, 36 Cal.2d 125 [222 P.2d 225], hereinafter discussed, which attacked the resolutions of the Los Angeles County Board of Supervisors and provided for repeal of those resolutions, the measure here neither attacks nor seeks repeal of any resolutions of the board. Therefore the measure must stand or fall upon its inherent validity. We think it must fall, for two reasons: First, the attempt to create a park in perpetuity and to require permanent maintenance and public use of the present courthouse exceeds the scope of the initiative under California law. Second, use of the initiative or referendum is confined to legislative enactments, while selection of courthouse sites and the adoption of plans for buildings to house the courts are administrative acts implementing a legislative policy declared by the State of California.

■ We take up, first, the defects in the measure itself. Real parties in interest concede that the power of the electorate to enact legislation by use of the initiative process is circumscribed by the same limitations as the legislative powers resting in the legislative body concerned. (*Mitchell* v. *Walker*, 140 Cal.App.2d 239, 243 [295 P.2d 90]; *Laguna Beach Taxpapers' Assn.* v. *City Council*, 187 Cal.App.2d 412, 414 [9 Cal.Rptr. 775].) In this case the legislative body is the Board of Supervisors of the County of Fresno. The present board by its legislative enactments cannot limit or restrict the power of succeeding boards. ■ This rule is clearly stated by the Supreme Court in *In re Collie*, 38 Cal.2d 396,

at page 398 [240 P.2d 275], as follows: "It is the general rule that one legislative body cannot limit or restrict its own power or that of subsequent Legislatures and that the act of one Legislature does not bind its successors." (See also *Thompson* v. *Board of Trustees*, 144 Cal. 281, 283 [77 P. 951]; *Briare* v. *Matthews*, 202 Cal. 1, 6 [258 P. 939].) ▮ Likewise the electorate of Fresno County cannot bind the successors of the present board of supervisors by use of the initiative. An attempt to do by the initiative that which is prohibited by law, would render the election an idle act.

▮ Real parties in interest suggest that the measure might be considered valid for the remainder of the present term of the board and thereafter as an advisory expression or as a declaration of policy. No authority is cited to support this theory, and we have found none, probably because article IV, section 1, of the California Constitution which vests the initiative power in the people, refers to "laws and amendments to the Constitution." No provision is made for the enactment of unenforceable, advisory or policy measures by the initiative. Since the policy enactment here proposed could not be enforced against the wishes of any succeeding board, the measure is misleading. The average voter would take the proposed ordinance at face value; indeed, he is entitled to rely on the measure as worded. The voter is not told that he is voting on a declaration of policy; the measure unequivocally provides for the creation of a park in perpetuity, and for the maintenance of the present courthouse for use by public agencies forever.

▮ The second reason why the writ of mandate must issue is predicated upon the fundamental rule of law that the initiative and referendum processes apply only to acts that are legislative in character, and not to administrative or executive acts. (*Housing Authority* v. *Superior Court*, 35 Cal.2d 550, 557 [219 P.2d 457]; *Johnston* v. *City of Claremont*, 49 Cal.2d 826, 834 [323 P.2d 71].)

▮ The resolutions of the Board of Supervisors of Fresno County adopting a courthouse site and approving courthouse building plans fall within the scope of its administrative duties. This is clearly established by the landmark case of *Simpson* v. *Hite, supra,* wherein the Supreme Court held the selection of a site for a courthouse and the adoption of plans for a building to house the courts and related county offices, to be purely administrative functions of the Los Angeles County Board of Supervisors. Specifically, the court

said, at pages 129-130: "The state Legislature has declared the legislative policy applicable here: that the board of supervisors shall provide suitable quarters for the municipal and superior courts. [Citations.]

"It seems obvious beyond the reach of serious argument that the board of supervisors cannot perform the duty of providing 'suitable quarters' for the courts without selecting and designating the sites of the buildings to house the courts, as well as the character and size of the buildings. The determination of what is 'suitable' as quarters for the courts necessarily includes the selection of a site as well as ascertainment of the extent and character of accommodations which a building or buildings must contain. Prescribing the policy and duty was the legislative act of the state; carrying out the policy by performing the duty is an administrative function delegated by the state to the local governing body, the board of supervisors."

To state the proposition in another way, the legislation (Gov. Code, § 68073) placing the duty upon the board of supervisors to provide a courthouse site and buildings to house the superior and municipal courts, was enacted by the state Legislature years ago, and the time to exercise a referendum as to that legislation has long since passed. Consequently the administrative acts of the board of supervisors in implementing a legislative enactment of the state cannot now be negated by a county initiative ordinance. (*County of Los Angeles* v. *Byram*, 36 Cal.2d 694, 699 [227 P.2d 4].) The reason for this rule of law is reflected by the following language in *Simpson* v. *Hite, supra,* at page 133: "If the selection of sites of courts buildings were subject to referendum, the electors could nullify every determination of the board of supervisors to erect buildings for the courts and thereby nullify the legislative policy [of the state] and prevent execution of the duty imposed upon the board of supervisors." (See also *Housing Authority* v. *Superior Court, supra,* 35 Cal.2d 550, 559 [219 P.2d 457].)

At first blush, the foregoing discussion of applicable principles of law would seem to resolve the issue. However, real parties in interest contend that their proposed initiative does not attempt to repeal the acts of the board, but rather that it is a legislative proposal to establish a park pursuant to Government Code section 25353 and to require the repair of public buildings pursuant to Government Code section 25351. In support of their contention that these are

legislative matters within the purview of the initiative and referendum provisions of the state Constitution, they cite the case of *Reagan* v. *City of Sausalito,* 210 Cal.App.2d 618 [26 Cal.Rptr. 775].

Clearly the administrative acts of the board and the proposed initiative are irreconcilable. The argument of real parties in interest that the legislative initiative must prevail overlooks the well-established principle of constitutional law that local enactments which conflict with state legislation of statewide concern must yield to the sovereignty of the state. (*Hall* v. *City of Taft,* 47 Cal.2d 177, 184 [302 P.2d 574]; *Wilson* v. *Beville,* 47 Cal.2d 852, 857 [306 P.2d 789]; *Laguna Beach Taxpayers' Assn.* v. *City Council, supra.*)

The proposed initiative is local in character since it is a county legislative measure to establish a park and to maintain a building. The effect of the proposed local initiative measure would be to accomplish indirectly that which cannot be done directly—to negate an administrative act of the board of supervisors done in the performance of a duty imposed upon it by state law (Gov. Code, § 68073). The proposed initiative would not only violate the sovereignty of the state (*County of Marin* v. *Superior Court,* 53 Cal.2d 633, 638 [2 Cal.Rptr. 758, 349 P.2d 526]; *Pipoly* v. *Benson,* 20 Cal.2d 366, 370 [125 P.2d 482, 147 A.L.R. 515]; *Hall* v. *City of Taft, supra*) but it would fly in the face of the Supreme Court's holding in both *Simpson* v. *Hite, supra,* and *County of Los Angeles* v. *Byram, supra,* that the state has declared the legislative policy and by law has imposed on the county a mandatory and explicit duty to provide suitable quarters for superior and municipal courts. Discussing the use of the initiative in such circumstances, the Supreme Court had this to say in *Simpson* v. *Hite, supra,* at pages 133-134:

"This application of the initiative would be 'inappropriate and impossible of operation' and would repeal 'provisions of . . . state law vesting administrative and discretionary powers in the Board of Supervisors' (*Newsom* v. *Board of Supervisors* (1928), *supra,* 205 Cal. 262, 269, 272 [270 P. 676], which held that the initiative method cannot be employed where compliance with the requirements of the general law calls for the exercise of the mixed administrative, legislative and judicial powers of the local legislative body and its various functions are so intermingled as to render the initiative entirely inconsistent and unworkable). The initiative or referendum is not applicable where 'the inevitable

effect would be greatly to impair or wholly destroy the efficacy of some other governmental power, the practical application of which is essential...' "

Counsel for real parties in interest suggests that *Simpson* v. *Hite, supra,* should be reassessed in the light of the dissent in an earlier case, *Housing Authority* v. *Superior Court, supra.* ▮ The suggestion ignores the recent case of *Auto Equity Sales. Inc.* v. *Superior Court,* 57 Cal.2d 450 [20 Cal. Rptr. 321, 369 P.2d 937], wherein the Supreme Court reiterated the longstanding rule that a court exercising inferior jurisdiction must follow the decisions of a court exercising higher jurisdiction. This court of intermediate jurisdiction could not overrule, modify, or ignore the governing principles expressed in *Simpson* v. *Hite, supra,* were we disposed to do so.

For the reasons above stated, it is ordered that the peremptory writ of mandate issue forthwith directing respondent to omit the proposed initiative ordinance from the ballot.

Brown (R. M.), J., concurred.

Conley, P. J., deeming himself disqualified, did not participate.