[Civ. No. 7682. Fourth Dist. Nov. 16, 1964.]

ATLAS HOTELS, INC., et al., Plaintiffs and Respondents, v. PHILLIP ACKER, as City Clerk, etc., et al., Defendants and Appellants.

Edward T. Butler, City Attorney (San Diego), Robert L. Bergen, Chief Deputy City Attorney, and Gaylord L. Henry, Deputy City Attorney, for Defendants and Appellants.

Gray, Cary, Ames & Frye, Richard A. Burt, Frederick P. Crowell and Josiah L. Neeper for Plaintiffs and Respondents.

STONE, J.*—This is an appeal from a writ of mandate directing appellants, officials of the City of San Diego, to submit an ordinance imposing a transient room tax to the referendum vote of the electors of the City of San Diego.

The City Council of San Diego, a city chartered pursuant to section 8 of article XI of the Constitution, enacted an ordinance imposing on transient occupants of hotel rooms a tax of 4 per cent of the rent charged, payable to the operator of the hotel at the time the rent is paid. Among other things,

*Assigned by Chairman of Judicial Council.

the ordinance provides that "All revenues collected by the City under this Article and remaining after payment of the costs incurred in the administration of this Article shall be used solely for the purpose of promoting the City of San Diego." The ordinance then allocates the entire net revenue to the San Diego Convention and Tourist Bureau.

The concluding section provides that "This ordinance shall take effect thirty-one (31) days from and after the date of its passage."

Respondents filed referendary petitions within the time prescribed by the charter, but the city clerk refused to process them on the ground the ordinance was not subject to referendum. Respondents sought a writ of mandate and, after a hearing on an alternative writ, the trial court ordered that a peremptory writ issue directing the city clerk and the other appellants herein to accept the referendary petition and carry out the duties imposed by the Charter of the City of San Diego and the San Diego Municipal Code with respect to referendary petitions.

Mandamus is a proper remedy to compel a city and its officials to submit an ordinance to referendum. (*Geiger* v. *Board of Supervisors,* 48 Cal.2d 832, 835 [313 P.2d 545].) Furthermore, plaintiff hotel owner is a proper party to maintain a proceeding in mandamus for this purpose since his business operations are inextricably interwoven into the operation of the ordinance. (*Gowens* v. *City of Bakersfield,* 179 Cal.App.2d 282, 285 [3 Cal.Rptr. 746].)

The referendum power is reserved to the people of the state by article IV, section 1, of the Constitution, but certain legislative acts are specifically excepted, among them "tax levies or appropriations for the usual current expenses of the State." This section also reserves the power of referendum "to the electors of each county, city and county, city and town of the State to be exercised under such procedure as may be provided by law." Charter cities, however, are not governed in the exercise of the referendum by the general law, for article IV, section 1, provides as to them: "Nothing contained in this section shall be construed as affecting or limiting the present or future powers of cities or cities and counties having charters adopted under the provisions of section 8 of article XI of this Constitution."

Charter cities may provide for the exercise of the power of referendum in a manner differing from that provided by general laws, or even the Constitution, so long as the charter

does not impinge upon the basic right of referendum expressed in the Constitution.

If the referendary powers reserved by a city charter differ from those delineated by the Constitution, the question arises: which prevails? It is not a matter of first impression, as the question of Constitution and charter referendum conflicts was faced by the Supreme Court in *Hunt* v. *Mayor & Council of City of Riverside*, 31 Cal.2d 619 [191 P.2d 426]. ▮ At page 623 the court stated the basic principle that: ". . . as between the provisions of the Constitution and the provisions of a city charter, those which reserve the greater or more extensive referendum power in the people will govern."

With this guiding precept in mind, we compare the city charter with the Constitution to determine which reserves "the greater or more extensive referendum power in the people." We refine the comparison at the outset by confining it to referendum powers related to tax and appropriation legislation. We include appropriation measures because although the transient room tax subjects each transient to a tax of 4 per cent on his room rent, the ordinance also provides that the net revenue therefrom "shall be used solely for the purpose of promoting the City of San Diego" and to that extent it is an appropriation measure.

Looking, first, at the Constitution, we find that article IV, section 1, excepts *all* "tax levies or appropriations for the usual current expenses of the State." The City Charter of San Diego, on the other hand, does not specify or categorize by subject the particular legislative enactments exempt from the referendum. Rather, by section 23 it delineates the right of referendum according to the effective date of an ordinance. The pertinent part of section 23 reads: "The powers of the initiative and referendum are hereby reserved to the people of the city. Ordinances may be initiated; and referendum may be exercised on any ordinance passed by the council except an ordinance which by the provisions of this charter takes effect immediately upon its passage."

It is apparent from the foregoing language that the charter reserves to the people a more extensive right of referendum than does the Constitution, as tax and appropriation ordinances may, if not made to take effect immediately, be subject to the referendum.

▮ Therefore, under the rule of the *Hunt* case, *supra*, we look to the charter for a determination of whether the transient room tax ordinance is subject to the referendum.

Since section 23 excepts from the referendum ordinances that take effect immediately upon passage, it would seem, at first impression, that the question is settled by the wording of the ordinance itself. The very last section reads: ''This ordinance shall take effect thirty-one (31) days from and after the date of its passage.''

Appellants argue that this language is ineffective and in violation of sections 16 and 17 of the charter. Section 16, a general provision regulating the time ordinances become effective, reads, in pertinent part:

''The annual appropriation ordinance, any ordinance calling or relating to elections, ordinances recommended by the City Manager or other independent department heads transferring or appropriating moneys already appropriated by the annual appropriation ordinance, ordinances establishing or changing the grade of a public highway, and emergency ordinances as defined by section 17 of this Charter, may be passed by the Council on the day of their introduction. Other ordinances, however, shall be passed only after six (6) calendar days have elapsed between the day of their introduction and the day of their final passage.''

Section 17, referred to by section 16, defines ''emergency ordinances'' which become effective immediately, as follows: ''Ordinances making the annual tax levy, the annual appropriation ordinances, ordinances calling or relating to elections, and emergency measures, shall take effect at the time indicated therein. All other ordinances passed by the Council shall take effect at the time indicated therein, but not less than thirty days from the date of their passage.''

Appellants argue that the transient room tax ordinance constitutes an adjunct to both the annual tax levy and the annual appropriation ordinance, which ordinances by the terms of sections 16 and 17 of the charter, become effective immediately upon passage. Thus, argue appellants, the ordinance became effective immediately despite the provision making it effective 31 days after passage. The argument presupposes, of course, that the council lacked authority to delay the effective date of an ordinance coming within the classification of either an ''annual tax levy'' or an ''annual appropriation.''

We need not concern ourselves with the validity of the presupposition because we have determined, for reasons stated below, that the ordinance is neither an annual tax levy nor a part of the annual appropriation ordinance within the purview of sections 16 and 17 of the charter.

The *annual* tax levy and the *annual* appropriation ordinances mentioned in the charter are each part of an integrated system of anticipating and providing funds to pay the annual current expenses of the city. The tax rate or annual tax levy through which the funds are derived, is based upon the assessed value of the real and personal property within the city. Section 76 of the charter provides that the tax levy authorized by the council to meet the annual current municipal expenses "for each fiscal year shall not exceed the rate of $1.34 on each $100.00 of assessed valuation of the real and personal property within the City."

The ordinance before us is not a tax upon real or personal property, nor is it a tax assessed to the taxpayers of the city; rather, it is a tax "imposed on transient occupants of hotel rooms in the City of San Diego." Clearly, the transient room tax is not an annual levy, but a tax which continues indefinitely at the same rate. Furthermore, the revenue does not become part of the general fund in the sense that it can be used to pay the usual current expenses of the city, as the ordinance restricts its use "solely for the purpose of promoting the City of San Diego." For that reason it is not reflected in the annual tax rate as a part of the annual tax levy.

Just as the continuing nature of the 4 per cent tax negates appellants' argument that the ordinance is a part of the annual tax levy, so does the allocation of the entire net revenue to the San Diego Convention and Tourist Bureau for an indefinite period take the ordinance out of the ambit of the annual appropriation ordinance. It is true, as appellants point out, the ordinance provides that "The total amount of the City's annual contribution to the San Diego Convention and Tourist Bureau shall be not less than $100,000.00," so that the city is bound to pay this sum if it should develop that the transient room tax revenue is insufficient to meet it. This contingency affects the annual tax levy so incidentally, if at all, that we believe it would violate the sense of the charter to hold that it is a supplement to the annual appropriation ordinance.

Appellants next argue that quite aside from the question of whether the ordinance is exempt from the referendum under sections 16, 17 and 23 of the charter, it is not subject to referendum because the authority of the city to impose a transient room tax derives from Government Code section 51030, which provides: "The legislative body of any city or

county may levy a tax on the privilege of occupying a room or rooms in a hotel, inn, tourist home or house, motel or other lodging unless such occupancy is for any period of more than 30 days. Such tax when levied by the legislative body of a county shall apply only to the unincorporated areas of the county.''

This statute, as appellants point out, vests the power to impose a transient room tax, not in the city nor in the people but in the legislative body of the city. Borrowing from *Geiger* v. *Board of Supervisors, supra,* appellants argue that the statute is an expression of intent by the state Legislature that the electors of a city or county shall have no power of referendum because the power to impose a transient room tax is vested by the statute, not in a city or a county as such but in the legislative body of the particular political subdivision of the state.

The analogy to *Geiger* is not applicable because that case involved the County of Butte, which derived its powers from the state Legislature, or the general law. San Diego, on the other hand, has the power inherent in a charter city to enact a revenue measure. ▮ So held the Supreme Court in *Ainsworth* v. *Bryant,* 34 Cal.2d 465, at page 469 [211 P.2d 564], by the following language: ''It is well settled that the power of a municipal corporation operating under a free-holders' charter (as is the city and county of San Francisco) to impose taxes 'for revenue purposes, including license taxes, is strictly a municipal affair' pursuant to the direct constitutional grant of the people of the state [citations], and that 'the restrictions on the exercise of that power are only the limitations and restrictions appearing in the Constitution and in the charter itself.' '' (See also *Gowens* v. *City of Bakersfield,* 193 Cal.App.2d 79, 83 [13 Cal.Rptr. 820].)

▮ Since the ordinance before us is a revenue measure, the principle enunciated in *Ainsworth* is controlling.

Another facet of the *Hunt* and *Geiger* cases is that each concerned a sales tax ordinance, and the revenue derived from the tax became a part of the general fund to be used for usual current governmental expenses. Here, the transient room tax revenue, by the very ordinance which would impose the tax, is reserved exclusively for promoting the City of San Diego. Further, as pointed out in *Geiger,* at page 837, the sales tax is a matter of statewide interest in that the enabling statute provides for an integrated county and city system for raising revenue.

Appellants make the additional argument that Government

Code section 51030 amounts to a preemption of the field of transient room tax by the state. It is asserted that this preemption removes any local ordinance implementing the statute, from the scope of local referendum. As authority for this argument appellants cite *In re Lane,* 58 Cal.2d 99 [22 Cal. Rptr. 857, 372 P.2d 897], and *People* v. *Bass,* 225 Cal.App.2d 777 [33 Cal.Rptr. 365], which hold that state statutes which define the elements of a criminal offense prevail over conflicting local ordinances pertaining to the same offense. We are also cited *Mervynne* v. *Acker,* 189 Cal.App.2d 558 [11 Cal. Rptr. 340], an opinion by this court, which holds that the regulation of parking meters is not subject to the initiative or referendum since the State of California has preempted the field of traffic regulation and control. The essence of these cases, criminal and civil, is that the state has preempted the particular field by expressing an intent to regulate the subject of the legislative enactment, to the exclusion of local regulation and control.

We do not find that Government Code section 51030 in anywise regulates or purports to control the transient room business. The statute simply enables counties and cities which derive their powers from the general law, to impose a transient room tax. It does not purport to protect the health or safety of transient renters or in any way control or preempt the field to the exclusion of local governmental entities.

Appellants also draw an analogy to *Simpson* v. *Hite,* 36 Cal.2d 125 [222 P.2d 225], and to *Mueller* v. *Brown,* 221 Cal. App.2d 319 [34 Cal.Rptr. 474], holding that an ordinance by a board of supervisors approving a building site or building plans for a county courthouse is an administrative, not a legislative, act and therefore not subject to a referendum by the voters. Basically, this contention is but a facet of the preemption-of-the-field argument. The *Simpson* and *Mueller* cases point out that it is a matter of state interest that each county provide suitable quarters for municipal and superior courts, and in furtherance of that state interest the Legislature preempted the field by directing the board of supervisors of each county to provide courthouses and courthouse sites. A board of supervisors simply performs an administrative act by enacting an ordinance to provide such facilities. Government Code section 51030, a general law revenue measure, does not come within the rationale of the *Simpson* and *Mueller* cases when applied to a chartered city.

Finally, appellants draw upon *Hunt* v. *Mayor & Council*

*of Riverside, supra,* pages 628-629, holding, in substance, that although the referendum power should be liberally construed whether it is found in the Constitution, in a statute, or in a charter, nevertheless, if after a consideration of the consequences of applying it to particular legislation it is found that it will destroy or greatly impair an essential governmental function, it should be assumed that the people intended no such result and that the power does not apply. Appellants contend that here the consequences of subjecting the transient room tax ordinance to a referendum would be an interference with an essential function of government. We cannot bring ourselves to hold that "promoting the City of San Diego," important as it may be, should take a place beside education, public health, street maintenance, fire and police protection, and like essential functions of government.

Appellants' arguments (a) that the referendum petitions, although signed by 5 per cent of the voters in the last election as required by the charter, actually represent the signatures of but 2 per cent of the people of the City of San Diego; (b) that the petitions were circulated by professional circulators receiving 15 cents per name and for $2,000 petitioners were able to obtain signatures which they assert represent the will of the people of San Diego but, in fact, they constitute a small group of people who seek to stay collection of important revenue to the city; (c) that the city council has made a study of the ordinance and all of its ramifications and has received expert advice, whereas the electorate voting on the same ordinance would be, for the most part, relatively uninformed, all present matters of public concern and they should not be dismissed lightly. Yet we believe the persuasiveness of these arguments lies in the suggestion that the charter should be amended to conform to the more restrictive referendary provisions of the state Constitution; they do not constitute grounds justifying a denial of the right of the referendum under the terms of the San Diego city charter as it now stands.

The judgment is affirmed.

Griffin, P. J., and Brown (Gerald), J., concurred.