[Civ. No. 29560.   Second Dist., Div. Two.   Mar. 30, 1966.]

HENRY F. MYERS et al., Plaintiffs and Respondents, v.
CITY COUNCIL OF THE CITY OF PISMO BEACH
et al., Defendants and Appellants.

Bernard S. Crossman, City Attorney, for Defendants and Appellants.

David & Gould and Ronald Gould for Plaintiffs and Respondents.

FOX, J.*—This is an appeal by the City of Pismo Beach from a judgment of the superior court which directed that a peremptory writ of mandate issue commanding the City Coun-

*Retired Presiding Justice of the District Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

cil of the City of Pismo Beach to adopt an initiative ordinance submitted to them[1] or in the alternative to call a special election to determine if the proposed initiative ordinance be adopted.

The City of Pismo Beach is not a chartered city but is governed by the general laws of the state.

On October 5, 1964, at a regular meeting of the city council a resolution entitled "Intent to Levy Tax" was adopted. On January 11, 1965, "Ordinance No. 114, An Ordinance Imposing a Tax Upon the Privilege of Transient Occupancy and Providing for the Collection Thereof" (commonly known as a room occupancy tax), was introduced. Public hearings were held thereon. The first reading of the proposed ordinance was on February 8, 1965. The second reading and the vote thereon which resulted in its passage were on March 8, 1965.

On December 9, 1964, petitioners, motel owners, and electors within the City of Pismo Beach, filed with the city clerk of said city a petition entitled "Initiative Petition for Enactment of a City Ordinance of Pismo Beach, California." (See fn. 1 for text.) At the next regular scheduled meeting of the city council on December 14, 1964, the city council refused to consider said petition on the advice of the city attorney, although the city clerk stated that said petition could be certified as having the necessary signatures and being in the proper form.

On March 3, 1965, petitioner filed in the superior court a petition for writ of mandate to compel the city council to adopt the proposed initiative ordinance that had been submitted to it, or, in the alternative, to call a special election to determine if the proposed ordinance should be adopted. An alternative writ was issued on March 4. The hearing on the writ was set for 2 p.m. on March 8. At approximately closing time on that date the court ruled in favor of petitioners, finding that "this is a proper case for issuance of a writ of

---

[1]The proposed initiative ordinance reads:

"AN ORDINANCE OF THE CITY OF PISMO BEACH PROHIBITING THE CITY COUNCIL FROM LEVYING A ROOM OCCUPANCY TAX.

"The People of the City of Pismo Beach do ordain as follows:

"A room occupancy tax of any sort on hotels, motels, boarding houses or any other type of structure used for dwelling purposes shall not be established in the City of Pismo Beach by the City Council.

"This Ordinance shall not be repealed either expressly or by any action of the City Council but may only be repealed by majority vote of the electors of the City of Pismo Beach.

"Any ordinance conflicting with any of the provisions of this ordinance either in whole or in part is herewith repealed."

mandate" and ordering (1) that a peremptory writ of mandate issue, and (2) that "the City Council is directed, under Section 4011 of the Elections Code,[2] to introduce and adopt the ordinance at their regular meeting tonight or in the alternative call a special election."

At the meeting of the city council that evening it passed Ordinance No. 114 (referred to above) imposing a 4 percent room occupancy tax. The council also voted to call a special election on May 11, 1965, to determine whether the proposed initiative ordinance should be adopted. The result of the election was to adopt the ordinance.

The judgment in the mandamus proceeding was signed on March 23, 1965, and filed on the same date. A peremptory writ of mandate was issued on that date but was not served on the city inasmuch as the city council had elected to follow the alternative, and had therefore called a special election to vote upon the proposed initiative ordinance.

█ The basic question underlying this appeal is: Is the proposed ordinance (see fn. 1) a proper subject for the initiative process? We have concluded that this question must be answered in the negative.

█ In exploring this question we start with the principle that "Municipal corporations have no inherent power of taxation. On the contrary, municipal corporations possess with respect to taxation only such power as has been granted to them by the Constitution or the statutes." (16 McQuillin, Municipal Corporations, (3d ed. rev.) § 44.05, quoted in substance in *City of Los Angeles* v. *Belridge Oil Co.,* 42 Cal.2d 823, 834 [271 P.2d 5].)

█ Initially, therefore, it must be borne in mind that Pismo Beach is a general law city, that is, it is governed by the general laws of the state, and derives its power to tax from article XI, section 12, of the state Constitution.[3] By general laws the Legislature has vested in the "corporate authorities"

---

[2]Section 4011, Elections Code, reads: "If the initiative petition is signed by not less than 15 percent of the voters of the city on the day the original petition is filed with the clerk of the legislative body, and contains a request that the ordinance be submitted immediately to a vote of the people at a special election, the legislative body shall either:

"(a) Introduce the ordinance without alteration at the regular meeting at which it is presented and adopt the ordinance within 10 days after it is presented.

"(b) Immediately call a special election at which the ordinance, without alteration, shall be submitted to a vote of the voters of the city."

[3]Article XI, section 12, reads: "Except as otherwise provided in this Constitution, the Legislature shall have no power to impose taxes upon

the power to assess and collect taxes for local municipal purposes. ▮ One of these general laws relates to the specific question at bench, viz., section 51030, Government Code,[4] which confers upon "the *legislative body* of any city or county" the right to levy a room occupancy tax such as is here involved. (Italics added.)

It will be noted that the authority to levy this tax is specifically delegated to *the legislative body* of the city. That, of course, is the city council. Upon that body is conferred the power and duty to deal with this subject matter. And the city council of course has discretion, as in any legislative matter, to determine what action, if any, should be taken.

We are thus brought to this aspect of our problem: May *the legislative body* of the city delegate the power and duty specifically conferred upon it in this matter? We think not.

On this point McQuillin says: "The rule that public powers conferred upon the council of a municipality cannot be delegated by it, has been applied to the power conferred upon municipalities to levy taxes, so that when power to levy taxes has been delegated by the legislature to a certain body or officers, they cannot delegate such power to another body or other officers." (*Id.* § 44.16.) Later in the same section is this statement: "*Clearly, taxing power committed to the 'Corporate authorities' cannot be exercised by others.*" (Italics added.)

In *Mitchell* v. *Walker,* 140 Cal.App.2d 239 [295 P.2d 90] (hg. den.) the court had before it an initiative ordinance which attempted to delegate to the county board of supervisors the power vested in the city council of a general law city to fix the salaries of city officials and employees. The court pointed out that "Section 36506 of the Government Code not only empowers the city council to fix the salaries of the city's officers and employees but makes it its duty so to do." And, "In performing this duty it is required to exercise its discretion." (P. 243.) The court further stated (p. 244) "The council could not itself delegate the power given it to any other body

counties, cities, towns or other public or municipal corporations, or upon the inhabitants or property thereof, for county, city, town, or other municipal purposes, but may, by general laws, vest in the *corporate authorities* thereof the power to assess and collect taxes for such purposes." (Italics added.)

[4]Section 51030, Government Code, reads: "The legislative body of any city or county may levy a tax on the privilege of occupying a room or rooms in a hotel, inn, tourist home or house, motel or other lodging unless such occupancy is for any period of more than 30 days. Such tax when levied by the legislative body of a county shall apply only to the unincorporated areas of the county."

[citations], nor could it abandon that power and refuse to perform the duty placed upon it by the statute or so act as to impede the future exercise of that power. [Citations.]''

The court went on to say: ''The effect of the proposed ordinance is to delegate to the governing body of another political subdivision of the state, to wit: the Board of Supervisors of the County of Los Angeles, the power vested in the council to fix the salaries in question; under it the council would abandon that power and the duty placed upon it by the statute and take that power and duty away from any future council. This the council could not do by an ordinance initiated and enacted by it, and therefore . . . the ordinance is not one which may be adopted by means of the initiative.''

As pointed out above the authority to deal with the type of tax here involved is specifically delegated to *the legislative body,* namely, the city council, and in dealing with that problem it is called upon to use its discretion. Since the authority was given to the city council and to no one else, and since the duty to deal with that problem was specifically placed upon the city council and since it involved the exercise of its discretion, it follows, as in the *Mitchell* case, that the council could not delegate this authority to another body, even to the electors of the city, nor could it abandon the power and duty imposed upon it and permit the electorate to usurp such responsibility by means of the initiative process.

*Geiger* v. *Board of Supervisors,* 48 Cal.2d 832 [313 P.2d 545], although dealing with an attempt to subject a county sales and use tax ordinance to referendum, supports the foregoing conclusion. The county sales and use tax ordinance was passed pursuant to the enactment of the Bradley-Burns Act. In the course of the opinion Chief Justice Gibson pointed out (p. 835) that article IV, section 1, of the California Constitution, reserves the referendum powers to the people except '' 'tax levies or appropriations for the usual current expenses of the State' '' and the same exception applies to the referendum powers reserved to county electors. Therefore the Constitution, standing alone, does not secure to county electors the right of referendum over tax levies or appropriations for the usual current expenses of county government. It was argued, however, that by reason of certain language used in the Elections Code (§§ 1651-1653) that county tax ordinances were subject to referendum. The court, however, held that the language used in the Elections Code did not compel the conclusion that the Legislature sought to extend the referendum

power to embrace sales and use tax ordinances contrary to article IV, section 1, of the Constitution. In arriving at that conclusion the Chief Justice made the following significant point (p. 838);

"An even stronger indication of intention that referendum should not be permitted appears in the language used by the Legislature in authorizing boards of supervisors to adopt sales and use tax ordinances. The act provides: 'Any county may *by action of its board of supervisors* adopt a sales and use tax in accordance with the provisions of this part.' (Italics added [by the court.]) (Rev. & Tax. Code, § 7201.) Ordinarily, a county exercises its powers through its board of supervisors (Gov. Code, § 23005), and it would have been unnecessary to refer to the 'board of supervisors,' in addition to the 'county,' if the intent had been to treat sales tax ordinances as ordinary legislation subject to referendum. *The fact that the statute not only provides that a county can adopt such a tax, but in addition specifies that this is to be done by action of the board of supervisors, plainly shows that the Legislature intended to limit to boards of supervisors the power to enact such ordinances.*" (Italics added.)

It is thus apparent that the Supreme Court took the view that the authority granted to the board of supervisors to pass a county sales and use tax ordinance was limited to the board itself, and could not be delegated or usurped by others. This is in harmony with the principle quoted above from McQuillin.

There are two additional aspects of this case that justify brief comment. ▉ (1) A proposed initiative ordinance cannot be used as an indirect or backhanded technique to invoke the referendum process against a tax ordinance of a general law city, such as Pismo Beach. It will be recalled that the last paragraph of the proposed initiative ordinance provides: "Any ordinance conflicting with any of the provisions of this ordinance either in whole or in part is herewith repealed." Thus if the vote at the special election on the proposed initiative ordinance were effective to make it a valid ordinance, the result would be to repeal Ordinance No. 114 passed by the city council on the evening of March 8, 1965, imposing a 4 percent room occupancy tax. Hence a type of referendum technique would have been discovered by which to attack and nullify a tax ordinance of a city like Pismo Beach which is governed by general laws. ▉ But article IV, section 1, of the California Constitution, expressly provides that the referendum powers therein reserved to the people do not

extend to "tax levies or appropriations for the usual current expenses of the State. . . ." The same exception applies to the political subdivisions of the state that are governed by general laws as distinguished from charters (see *Geiger* v. *Board of Supervisors, supra*). Thus the electors of Pismo Beach, which city derives its powers from the general laws, have no referendum power when it comes to repealing a tax ordinance. That which the electors have no power to do directly, they obviously cannot do indirectly.

(2) Such a proposed initiative ordinance, even if approved by a vote of the electors, cannot be used as a means of tying the hands of the city council and depriving it of the right and duty to exercise its discretionary power in a taxation matter such as is here involved. This is because, as is pointed out earlier in this opinion, the power and duty specifically conferred upon "the legislative body" of the city cannot be delegated to nor usurped by another body (*Mitchell* v. *Walker, supra*), and because the city council can neither bind itself nor any succeeding council not to impose a room occupancy tax when the general law has specifically granted to "the legislative body" of the city the power to impose such a tax. (*Mueller* v. *Brown,* 221 Cal.App.2d 319 [34 Cal.Rptr. 474].)

Petitioners' reliance on *Hunt* v. *Riverside,* 31 Cal.2d 619 [191 P.2d 426], and *Atlas Hotels, Inc.* v. *Acker,* 230 Cal. App.2d 658 [41 Cal.Rptr. 231], is misplaced. Each of these cases deals with the interpretation of the referendum provisions of the charter of a particular city. It is therefore important that we here point out that the electors of a city that is governed by a charter, may reserve greater authority and power in their city charter in the field of direct local legislation than electors have who live in a city, such as Pismo Beach, which is governed by general laws. Hence it is important in evaluating a statement by a reviewing court in the area of direct legislation to be aware of the legal structure under which the particular municipality is organized and operates. For example, petitioners quote and rely upon the following dictum in *Hunt* v. *Riverside, supra,* (p. 629) ; ". . . it would seem that the sales tax levy may still be voted upon by the people *under present initiative provisions of the charter."* (Italics added.) It is thus apparent that the court's comment was made in relation to the initiative provisions in the city charter. Such a statement has no bearing upon the instant case since Pismo Beach was organized and operates under a different legal structure.

The petitioners argue that the city council has waived the right to appeal on the theory that it voluntarily complied with the court's order by ordering the special election at which the people would have the opportunity to vote upon the proposed initiative measure. Although they argue that the case is now moot, they do not move to dismiss upon that ground. We cannot, however, agree that the case is moot.

From the character and sequence of the events that occurred in the superior court on the afternoon of March 8, 1965, and in the City Council of Pismo Beach that evening, it is a reasonable inference that the members of the city council were not without concern lest they might be subject to a citation for contempt in the event they declined to either pass the proposed initiative ordinance or order a special election for the people to vote upon it. It will be recalled that the court did not makes its order in this matter until approximately closing time that afternoon. In that order the court provided that "the City Council is directed, under Section 4011 of the Elections Code, to introduce and adopt the ordinance at their regular meeting tonight, or in the alternative call a special election." Although the order was not final it is a reasonable inference that the members of the city council were notified of its contents and were persuaded by its command to order the special election, although they had previously refused on the advice of the city attorney to consider it. To say the least, it is a reasonable inference that the members of the city council, so to speak, felt the judge "breathing down their necks." In the context of these circumstances it is difficult to conclude that the action of the city council in calling the special election was entirely free and voluntary.

█ Furthermore, as previously indicated, the question before the court was as to whether or not the proposed ordinance was a proper subject for the initiative process. As we have pointed out this ordinance was not a proper subject for the initiative process, hence the court erroneously ordered the city council either pass said proposed ordinance or submit it to a vote of the people. So the underlying question at issue in this case is not moot but a recurring problem of public interest that affects the taxing power of the city and its fiscal policy and which, therefore, in the interest of orderly city government, ought to be decided.

█ Since the city council had no power to delegate its authority in relation to the taxation matter involved in this case, its action in submitting the proposed ordinance to a vote

of the people was ineffectual. Therefore, the proposed ordinance approved by the vote of the people is a nullity. This would be the result of the proceedings taken by the city council even though no lawsuit had been filed by petitioners and no order made or judgment rendered.

The judgment is reversed and the proposed initiative ordinance which the voters approved at the special election is declared a nullity.

Roth, P. J., and Herndon, J., concurred.