[Civ. No. 57652. Second Dist., Div. One. Aug. 11, 1980.]

FRED BOCK et al., Plaintiffs and Appellants, v.
CITY COUNCIL OF THE CITY OF LOMPOC et al.,
Defendants and Respondents.

**COUNSEL**

Lloyd Nocker for Plaintiffs and Appellants.

Alan D. Davidson, City Attorney, for Defendants and Respondents.

Roy C. Abrams, City Attorney (Palo Alto), Donald H. Maynor, Senior Assistant City Attorney, and Dennis W. De Cuir, City Attorney (Roseville), as Amici Curiae on behalf of Defendants and Respondents.

## OPINION

**HANSON (Thaxton), J.**—Fred Bock and Ed Dahle[1] (hereafter referred to collectively as Bock) appeal from an order denying their petition for a writ of mandamus to compel Lompoc City Council and its individual members, Charles Ward, Charlotte Benton, Joe Valencia, E. C. Stevens, and Tom Green (hereafter referred to collectively as Council), to enact or to submit to the city voters as an initiative measure an electric utility rate ordinance submitted by Bock.

### FACTS

The City of Lompoc (hereafter referred to as the City) owns and operates its own system for the distribution of electricity to customers in the Lompoc vicinity. It presently purchases all of its electric power needs from a private utility company, Pacific Gas and Electric Company (hereafter referred to as PG&E). The price for electricity purchased under its contract with PG&E is the wholesale rate established by the Federal Energy Regulatory Commission. The Council establishes the retail rates it charges its customers for the distribution of the electricity.

On December 19, 1978, Bock submitted to the Council an initiative petition containing an ordinance which he requested the Council to enact or place on the ballot. The proposed ordinance would require the City to charge its residential customers an electric rate identical to PG&E's schedule D-4.[2] That schedule establishes a domestic service rate known as the lifeline rate approved by the California Public Utilities Commission (hereafter referred to as PUC). The proposed ordinance would also require the City to maintain that rate as it may subsequently be changed by either the PUC or the Legislature.

When the Council refused to enact the proposed ordinance or place it on the ballot as an initiative measure, Bock petitioned the court for a writ of mandate to compel the Council to take such action. The trial court on the basis of a lengthy statement of stipulated facts (including

---

[1]The third petitioner for the writ in the trial court, Helen Gehrts, does not join in this appeal.

[2]The designation of that schedule was changed after the filing of the petition and is now schedule D-1.

11 exhibits) rendered judgment in favor of the Council. Although findings of fact and conclusions of law were not requested, the court issued a "Memorandum of Intended Decision" in which it observed that since the City used the electric service charges as a source of revenue for its general fund, the proposed ordinance dealt with a tax levy and was therefore not a proper subject of the initiative process. (Cal. Const., art. II, § 9.)

The decision of the trial court has been appealed by Bock. By permission of the appellate court, the Cities of Roseville, Palo Alto, Redding, Alameda, Gridley, Biggs, Santa Clara, Azusa, Pasadena and the Shasta Dam Utility District have filed collectively an amici curiae brief.

Issues

Bock contends on appeal that the trial court erred in denying the petition for mandate and argues (1) that it would not constitute an unlawful delegation of the City's rate-making authority to the PUC; (2) that the initiative did not deal with a tax matter; (3) that the initiative subject matter, being legislative rather than administrative in nature, is a proper subject for the initiative process; (4) that the initiative would not impair the ability of the electric utility to meet its current expenses; and (5) that the initiative would not impair the City's obligations under a contract with the Northern California Power Agency (hereafter referred to as NCPA).

Discussion

I

The determinative issue in this appeal is the contention by Bock that the proposed ordinance would not delegate to the PUC any of the City's legislative authority, but that instead it would constitute a permissible delegation of power to the PUC to determine Lompoc's rate on the basis of specific facts and this act is merely administrative in nature (*Kugler* v. *Yocum* (1968) 69 Cal.2d 371, 376 [71 Cal.Rptr. 687, 445 P.2d 303]).

Article II, section 9, subdivision (a), of the California Constitution extends to municipalities the authority to operate public utilities. Section 9, subdivision (b) thereof requires that such utilities be regulated by the city, although delegation of some authority is allowed if regulat-

ed by adequate standards of operation (*Kugler v. Yocum, supra,* 69 Cal.2d at pp. 375-376). The delegation of legislative authority by a city, although criticized by legal experts (see 1 Davis, Administrative Law Treatise (1958) § 2.07), has customarily been permitted in California so long as the truly fundamental issues are resolved by the legislative body of the municipality and the delegation of power is accompanied by safeguards adequate to prevent its abuse (*Kugler v. Yocum, supra,* 69 Cal.2d at p. 376; *Wilke & Holzheiser, Inc. v. Dept. of Alcoholic Bev. Control* (1966) 65 Cal.2d 349, 369 [55 Cal.Rptr. 23, 420 P.2d 735]).

The truly fundamental issues and the standards for the delegation of authority have been resolved by the initiative in the case at bench. The initiative sets forth the policy of using lifeline rates and states that the standard for setting that rate shall be identical to PG&E's lifeline rate. However, "[t]he need is usually not for standards but for safeguards. ...[T]he most perceptive courts are motivated much more by the degree of protection against arbitrariness than by the doctrine about standards...." (1 Davis, Administrative Law Treatise, *supra,* § 2.15, p. 151.)

The initiative at bench in allowing Lompoc's utility rate to follow the PUC's determination of PG&E's lifeline rate evidences a lack of adequate safeguards because it requires Lompoc's utility rate to remain the same as that of PG&E's lifeline rate.

It is stipulated that two sets of factors determine PG&E's lifeline rate, and from the record it is clear that neither set of factors used in that determination has any rational relevance to the electrical utility rates appropriate for the City.

The first set of factors which go into determination of the PUC lifeline rate relates to the volume of electricity used by PG&E's customers. Section 739 of the Public Utilities Code requires that the determination of PG&E's lifeline rate take into account the minimum energy needs of the average residential customer for heating, cooling, lighting, and cooking. The PUC will determine this amount according to PG&E's customer list, taking into account differences in geography, climate, and season (Pub. Util. Code, § 739). Yet in view of the differences between the residential customer constituency of PG&E and that of the Lompoc utility, the setting of Lompoc's rate identical to that of PG&E's lifeline rate would seem to be arbitrary. PG&E is a giant utility with almost 3.4 million customers, selling over 61 billion kilowatt hours to custom-

ers who live in a diverse range of climatic environments. The Lompoc utility, in contrast, has less than 10,000 customers and sells only to clientele in a circumscribed area.

The second set of factors that determine PG&E's lifeline rate are fiscal in nature. These factors include the cost of service to each class of PG&E customers (16 U.S.C. §§ 2621, 2625), PG&E's gross operating revenues, its various costs and expenses, and computation of a fair and reasonable rate of return (53 Cal.Jur.3d, Public Utilities, § 54, pp. 66-68). PG&E and the Lompoc utility also have nothing in common in regard to these rate-setting factors. The City has an entirely different cost of operations in amount and type (Lompoc does not even have the same type of expenses as PG&E, e.g., advertising costs, income taxes, and property taxes); it has revenues different in amount and source (only 30.6 percent of PG&E's customers, as compared to 53.4 percent of Lompoc's customers, are residents); and different costs of power (Lompoc is only a wholesale purchaser while PG&E is a producer).

As a result of the factual dissimilarities between the two utilities, PG&E's lifeline rate bears no reasonable relationship to the rate Lompoc might need to charge its residential customers. Under the initiative the PUC would be forced to determine Lompoc's utility rate without taking into account any of Lompoc's individual characteristics. Lompoc, without any standing before the PUC and without the power to amend the PUC's decision, would then be forced to implement it. The result would be a utility rate that is irrational and arbitrary, and this would constitute an unlawful delegation of authority.[3]

Accordingly, we conclude that the initiative at bench constitutes an unlawful delegation of power because it fails to provide adequate safeguards to insure that the PUC is required to determine Lompoc's utility rate with Lompoc's characteristics in mind. When a statute delegates power with inadequate protection against unfairness where such protec-

---

[3]The case at bench is factually distinguishable from *Kugler* v. *Yocum, supra,* 69 Cal.2d 371, the seminal case involving prevailing wage clauses. First, there the prevailing wage of all Los Angeles City and County firemen was to be determined by factors that would be common to most communities (69 Cal.2d at p. 382). Second, the prevailing wage only constituted a minimum wage for the firemen of Alhambra, with the city retaining the discretion to raise the rate and set the standards for higher classifications (*id.,* at pp. 377-378, fn. 3).

tion can be easily provided, the reviewing court may insist that such protection be included or, in the alternative, declare the legislation invalid. (1 Davis, Administrative Law Treatise, *supra*, § 2.15.)

## II

■ We note in passing that the initiative does not deal with a tax matter. Since electrical rates represent a charge for nontraditional services rather than a tax (*Packet Co. v. Keokuk* (1877) 95 U.S. 80, 84 [24 L.Ed. 377, 380]; *Arcade County Water Dist. v. Arcade Fire Dist.* (1970) 6 Cal.App.3d 232, 240 [85 Cal.Rptr. 737]), the proposed ordinance is not subject to the constitutional restrictions applied to the use of the initiative process for tax measures. (Cal. Const., art. II, § 9, subd. (a); *Myers v. City Council of Pismo Beach* (1966) 241 Cal.App. 2d 237, 243 [50 Cal.Rptr. 402].)

Moreover, despite the fact that from our review and analysis of the remaining issues raised by appellant Bock it appears they might all be subject to resolution in Bock's favor, our determination of the impropriety of the delegation of authority hereinbefore discussed controls the disposition of this case.

### DISPOSITION

The order of the trial court denying the writ of mandate is affirmed.

Lillie, Acting P. J., and Newman (J. M.), J.,* concurred.

A petition for a rehearing was denied September 8, 1980, and appellants' petition for a hearing by the Supreme Court was denied October 15, 1980. Bird, C. J., and Mosk, J., were of the opinion that the petition should be granted.

---

*Assigned by the Chairperson of the Judicial Council.