[No. G006360. Fourth Dist., Div. Three. Sept. 14, 1988.]

CITY OF WESTMINSTER, Plaintiff and Appellant, v. COUNTY OF ORANGE et al., Defendants and Respondents; CALIFORNIA TAX REDUCTION MOVEMENT, Intervener and Respondent.

624

**COUNSEL**

Paul H. Morgan, Howard, Rice, Nemerovski, Canady, Robertson & Falk and Steven L. Mayer for Plaintiff and Appellant.

James P. Botz, County Counsel (Sonoma), James K. Hahn, City Attorney (Los Angeles), Pedro B. Echeverria and Richard A. Dawson, Assistant City Attorneys, and Michael L. Klekner, Deputy City Attorney, as Amici Curiae on behalf of Plaintiff and Appellant.

Adrian Kuyper, County Counsel, and Victor T. Bellerue, Deputy County Counsel, for Defendants and Respondents.

Straw & Gilmartin, Lawrence J. Straw, Jr., Paul T. Gough, Kaplanis & Grimm and Trevor A. Grimm for Intervener and Respondent.

Ronald A. Zumbrun, Anthony T. Caso, Jonathan M. Coupal, and Jeffrey T. Even as Amici Curiae on behalf of Intervener and Respondent.

## OPINION

**CROSBY, J.**—In a superior court action for injunctive and declaratory relief, the City of Westminster unsuccessfully challenged the constitutionality of Proposition 62, a statewide statutory initiative passed in November 1986. The initiative will nullify the city's recently enacted utility users' tax unless the municipal electorate approves the levy by November 5, 1988. We believe the requirement of local voter ratification violates the California Constitution and reverse with directions accordingly.

I

The City of Westminster is a general law city. It has encountered increasing fiscal difficulty in recent years, partially as a result of Proposition 13, an earlier statewide initiative, and the abatement of federal revenue sharing. On September 23, 1986, the Westminster City Council enacted a 5 percent utility users' tax and designated the revenues for the city's general fund. The tax became effective January 1, 1987, and continues in force.[1]

California voters approved Proposition 62, a statutory initiative, in the November 1986 general election. Sponsored by the California Tax Reduction Movement (CTRM), the initiative added sections 53720 through 53730 to the Government Code.[2] As of November 15, 1988, Government Code section 53727, subdivision (b) prohibits collection of a general tax enacted after July 31, 1985, unless a majority of the city's voters has approved it within two years of the date of the initiative. If voter approval is not forthcoming, any utility users' tax revenues realized after November 15, 1988, will be offset dollar for dollar by a reduction in the city's property tax allocation.

The city sought a declaration that Proposition 62 is unconstitutional as applied to the utility users' tax and an injunction to restrain the County of Orange from withholding property tax monies after November 15, 1988. CTRM intervened in the action to defend the measure it had sponsored. The superior court entertained cross-motions for summary judgment and CTRM prevailed.[3]

---

[1] Mark Twain's friend, Charles Dudley Warner, said, "The thing generally raised on city land is taxes." (Warner, My Summer in the Garden (1870) Sixteenth Week.)

[2] The entire statutory scheme is set forth in the appendix to this opinion as it was presented to the electorate in the voter pamphlet prepared by the Secretary of State.

[3] The court concluded, "The vote required under [Government Code] § 53727(b) is not a referendum and is not violative of Art. II, § 9(a) of the California Constitution. (*Carlson v. Cory* (1983) 139 Cal.App.3d 724 [189 Cal.Rptr. 185].)" It also observed that Proposition 62 was "enacted through the proper use of the initiative process . . . . This was a statewide initiative which has statewide application. The People of the State of California through the

## II

■■ The threshold issue involves a brief consideration of terms. Is the ratification election mandated by Proposition 62 an initiative or a referendum as applied to the city's utility users' tax? If it is the latter, there is very little to discuss. As the city correctly notes, Government Code section 53727, subdivision (b) is unconstitutional insofar as it calls for local tax referenda because article II, section 9, subdivision (a) of the California Constitution exempts tax levies from the referendum power of the statewide electorate, as well as the municipal electorate in general law cities. (Cal. Const., art. II, § 11; *Geiger* v. *Board of Supervisors* (1957) 48 Cal.2d 832, 836-839 [313 P.2d 545]; cf. *Hunt* v. *Mayor & Council of Riverside* (1948) 31 Cal.2d 619, 623-624 [191 P.2d 426] [charter cities may provide broader referendum powers].) CTRM insists, however, that Proposition 62 merely requires ratification by *initiative* of post-July 31, 1985 "window period" taxes and urges us to ignore the question of whether the proposition will violate article II, section 9 with respect to future tax ordinances because that specific issue is not presented in this proceeding.

The submission of this particular tax to the local electorate resembles an initiative in some respects and a referendum in others. For example, Westminster's utility users' tax was enacted but not yet in effect when Proposition 62 was approved by the statewide electorate; and a referendum typically does operate to require voter ratification of measures passed but not yet in effect. (*Referendum Committee* v. *City of Hermosa Beach* (1986) 184 Cal.App.3d 152, 157-158 [229 Cal.Rptr. 51]; see also *American Federation of Labor* v. *Eu* (1984) 36 Cal.3d 687, 713-714 [206 Cal.Rptr. 89, 686 P.2d 609]; *Assembly* v. *Deukmejian* (1982) 30 Cal.3d 638, 656-657; *Carlson* v. *Cory, supra,* 139 Cal.App.3d 724, 730-731.) The referendum is "the right reserved to the people to adopt or reject any act or measure which has been passed by a legislative body, and which, in most cases, would without action on the part of the electors become a law." (*Whitmore* v. *Carr* (1934) 2 Cal.App.2d 590, 592 [38 P.2d 802].) The present ordinance *did* become operative, however, and is now in effect.

Moreover, referenda suspend the implementation of ordinances when they qualify for the ballot with the signatures of 10 percent of the voters

initiative process, have the power to declare state policy. . . . All doubts are to be [resolved] in favor of the use of the [i]nitiative process, which is a precious right reserved to the People."

The city petitioned this court for extraordinary relief, contending an appellate remedy was too slow and, thus, inadequate. The city's own procrastination during the two-year grace period provided by Proposition 62 made that statement possible, of course. We denied the writ petition but nevertheless ordered the appeal expedited because of the public importance of the issue presented (Cal. Rules of Court, rule 19.3) and designated the superior court file as the appellate record, subject to an objection by the parties. None has been received.

(Elec. Code, § 4051); but Proposition 62 carries no suspension provision for window period tax measures. Also, an initiative can be proposed by a local governing body without a petition from the electorate (Elec. Code, § 4017), but a referendum is only triggered by petition of the voters in response to a legislative enactment (Elec. Code, § 4055).

Consequently, and contrary to the city's argument, we believe the ratification process mandated by Proposition 62 describes a local initiative, rather than a referendum, in the case of window period tax ordinances. We will conclude, however, that under a virtually unbroken line of appellate authority, the label is not significant in this instance.

### III

Article II, section 8, subdivision (a) of the California Constitution provides, "The initiative is the power of the electors to propose statutes and amendments to the Constitution and to adopt or reject them." Although use of the statewide initiative power has been upheld to repeal *statewide* taxes (*Carlson* v. *Cory, supra,* 139 Cal.App.3d 724), a host of other decisions have determined that the initiative may not be used as a substitute for an impermissible referendum. (*Myers* v. *City Council of Pismo Beach* (1966) 241 Cal.App.2d 237, 243 [50 Cal.Rptr. 402]; see also *City of Atascadero* v. *Daly* (1982) 135 Cal.App.3d 466, 470 [185 Cal.Rptr. 228]; *Bock* v. *City Council* (1980) 109 Cal.App.3d 52, 58 [167 Cal.Rptr. 43]; *Gibbs* v. *City of Napa* (1976) 59 Cal.App.3d 148, 153 [130 Cal.Rptr. 382]; *Campen* v. *Greiner* (1971) 15 Cal.App.3d 836, 843 [93 Cal.Rptr. 525]; *Dare* v. *Lakeport City Council* (1970) 12 Cal.App.3d 864, 867 [91 Cal.Rptr. 124].)

These holdings cannot be overcome, based as they are on constitutional jurisprudence, by the mere passage of a statute; and Proposition 62 brought statutory changes, not constitutional amendments. Also, these cases are not distinguishable because they dealt with the powers of local voters; *Geiger* v. *Board of Supervisors, supra,* 48 Cal.2d at pages 836-839 teaches that the statewide electorate has no more authority to ignore the state constitutional ban on interference with municipal fiscal affairs by implementing a scheme of local voter control than do the local voters themselves. Thus, because "[a] statutory initiative is subject to the same . . . constitutional limitations as are the Legislature and the statutes which it enacts" (*Legislature* v. *Deukmejian* (1983) 34 Cal.3d 658, 674 [194 Cal.Rptr. 781, 669 P.2d 17]), Government Code section 53727, subdivision (b) is plainly unconstitutional under California Constitution, article II, section 9, subdivision (a).

For example, in *Myers* v. *City Council of Pismo Beach, supra,* 241 Cal.App.2d 237, a local initiative would have repealed an existing room

occupancy tax and prohibited the City of Pismo Beach from enacting another without local voter approval. The court determined the ordinance was invalid because it attempted to accomplish by initiative what could not be done by referendum: "A proposed initiative ordinance cannot be used as an indirect or backhanded technique to invoke the referendum process against a tax ordinance of a general law city . . . . It will be recalled that the last paragraph of the proposed initiative ordinance provides: 'Any ordinance conflicting with any of the provisions of this ordinance either in whole or in part is herewith repealed.' Thus if the vote at the special election on the proposed initiative ordinance were effective to make it a valid ordinance, the result would be to repeal [the ordinance] imposing a 4 percent room occupancy tax. Hence a type of referendum technique would have been discovered by which to attack and nullify a tax ordinance of a city . . . governed by general laws. But . . . the California Constitution [] expressly provides that the referendum powers therein reserved to the people do not extend to 'tax levies or appropriations for the usual current expenses of the State. . . .' The same exception applies to the political subdivisions of the state that are governed by general laws as distinguished from charters [citation]. Thus the electors of Pismo Beach, which city derives its powers from the general laws, have no referendum power when it comes to repealing a tax ordinance. That which the electors have no power to do directly, they obviously cannot do indirectly." (*Id.* at pp. 243-244.)

*Carlson* v. *Cory, supra,* 139 Cal.App.3d 724, upon which CTRM and the trial court relied, does not compel a contrary result. There, the state's voters enacted two initiative statutes in the June 8, 1982, statewide election repealing California's inheritance and gift tax laws. Taxpayers challenged the constitutionality of the measures, contending the Legislature's power to tax could be limited only by constitutional amendment and the initiative could not be used to circumvent the Constitution's prohibition against tax referenda as embodied in article II, section 9, subdivision (a) of the California Constitution. (*Id.,* at p. 730.)

The Court of Appeal disagreed, observing that article II, section 8 of the Constitution reserved the power of the initiative to the electorate "to propose statutes and amendments to the Constitution' without limitation." (139 Cal.App.3d at p. 728.) The court reasoned, "This reservation of power by the people is, in the sense that it gives them the final legislative word, a limitation upon the power of the Legislature." (*Ibid.*) It concluded, "[T]here is nothing in our state Constitution which prohibits the use of the [statewide] statutory initiative to repeal [statewide] tax laws." (*Id.,* at p. 731.)

CTRM suggests *Carlson* has limited the scope of cases such as *Myers* v. *City Council of Pismo Beach, supra,* 241 Cal.App.2d 237. We are unper-

suaded for a number of reasons. First, *Carlson* is factually dissimilar: Proposition 62 does not repeal a statewide tax; instead, it subjects certain existing local revenue measures to *local* initiatives and future ones to referenda. Further, *Carlson* is a decision of the Court of Appeal and could not, and does not purport to, dilute the Supreme Court's holding in *Geiger* or the well-established proposition that municipal referendum and initiative powers may not be used to invalidate municipal tax measures. Nor, as another court observed in adhering to the rule we follow today, did *Carlson* criticize *Myers's* holding: " '[N]either the initiative nor the referendum may be used in a manner which interferes with a local legislative body's responsibility for fiscal management. [Quoting *Carlson*.]' " (*Fenton* v. *City of Delano* (1984) 162 Cal.App.3d 400, 407 [208 Cal.Rptr. 486].)

*Carlson* did recognize "the rule which requires that all doubts be [resolved] in favor of this precious reserved right of the people." (*Carlson* v. *Cory, supra,* 139 Cal.App.3d at pp. 731-732.) But it is to be remembered that *Carlson* dealt with a statewide initiative *and* statewide taxes. The rule does not apply in cases of the sort before us: "[D]ecisions invalidating *initiative* or *referendum* measures to repeal local tax levies have indicated a policy of resolving any doubts in the scope of the initiative or referendum in a manner that avoids interference with a local legislative body's responsibilities for fiscal management." (*Birkenfeld* v. *City of Berkeley* (1976) 17 Cal.3d 129, 143 [130 Cal.Rptr. 465, 550 P.2d 1001], italics added.) *Carlson* cites *Birkenfeld* for this very point. (*Carlson, supra,* at p. 731.)

A requirement that local tax measures be submitted to the electorate by either referendum or initiative would be a gross interference with the fiscal responsibility of local governments. Section 24 of article XIII of the California Constitution permits the Legislature to "authorize local governments to impose [taxes]." The Supreme Court has recently noted, "When construing statutes containing generic references, such as 'legislative body' or 'governing body,' the Courts of Appeal have *generally* permitted exercise of the initiative and referendum when the subject matter was of purely local concern [citations]." (*Committee of Seven Thousand* v. *Superior Court* (1988) 45 Cal.3d 491, 504 [247 Cal.Rptr. 362, 754 P.2d 708], italics added.) An exception has long been in place in the area of local tax measures, however. (*Birkenfeld* v. *City of Berkeley, supra,* 17 Cal.3d 129; *City of Atascadero* v. *Daly, supra,* 135 Cal.App.3d 466; *Bock* v. *City Council, supra,* 109 Cal.App.3d 52; *Gibbs* v. *City of Napa, supra,* 59 Cal.App.3d 148; *Dare* v. *Lakeport City Council, supra,* 12 Cal.App.3d 864; *Myers* v. *City Council of Pismo Beach, supra,* 241 Cal.App.2d 237.)

A lonely arguable exception to the exception is *Atlas Hotels, Inc*. v. *Acker* (1964) 230 Cal.App.2d 658 [41 Cal.Rptr. 231], a case cited by the Supreme

Court in *Committee of Seven Thousand* in support of the quotation in the previous paragraph. But *Acker* dealt with a referendum concerning a transient room tax in a city whose charter specifically allowed tax referenda. And charter cities have tax powers independent of the legislative authorization found in the California Constitution. (*Id.,* at p. 664.) For example, "as between the provisions of the Constitution and the provisions of a city charter, those which reserve the greater or more extensive referendum power in the people will govern." (*Hunt* v. *Mayor & Council of Riverside, supra,* 31 Cal.2d 619, 623.) By contrast, established and long-standing precedent forbids interference with municipal fiscal powers via the referendum or initiative in general law cities. (*City of Atascadero* v. *Daly, supra,* 135 Cal.App.3d 466; *Bock* v. *City Council, supra,* 109 Cal.App.3d 52; *Gibbs* v. *City of Napa, supra,* 59 Cal.App.3d 148; *Dare* v. *Lakeport City Council, supra,* 12 Cal.App.3d 864; *Myers* v. *City Council of Pismo Beach, supra,* 241 Cal.App.2d 237.) Consequently, we conclude Government Code section 53727, subdivision (b) must be declared unconstitutional insofar as it subjects this particular tax to an examination by the electorate as a condition of its continued existence.

## IV

This does not end the matter, however, for the initiative contains an embryonic severability clause (Gov. Code, § 53730). And we must give effect to the intent of the electorate to the greatest extent possible where only portions of an enactment are defective. Also, perhaps anticipating the analysis above, one amicus brief does argue the statewide electorate essentially intended Proposition 62 to repeal window period ordinances and the requirement of local voter ratification can be severed from that desire.

We agree the statewide electorate had the power to repeal the window period ordinances in general law cities (*Carlson* v. *Cory, supra,* 139 Cal.App.3d 724); the electorate or the Legislature could withdraw the entire power of municipal taxation from general law cities if either chose to do so. (Cal. Const., art. XIII, § 24.) But it is far from clear that the passage of Proposition 62 signaled any such intent, and we find considerable evidence negating the suggestion that the electorate understood the proposition would defeat continued collection of window period taxes without the safety valve of the defective local voter ratification requirement.

We first turn to the somewhat curious severability clause of Proposition 62 itself, enacted in Government Code section 53730:[4] "If any

---

[4] A brief disclaimer: We know most voters do not cast ballots in most elections and strongly suspect that, of those who do, most do not engage in a detailed study of the voter pamphlet

provision of this Article, or the application thereof to any person, organization, local government, district, or circumstance is held invalid or unconstitutional, the provision to other persons, organizations, local governments, districts, or circumstances shall not be affected thereby but shall remain in full force and effect." This is not typical severability clause language. Such provisions in most propositions, statutes, and private contracts provide that if one portion of the whole is stricken, or is for some reason unenforceable, the balance is to remain in full force. Instead, section 53730 appears only to contain a singular attack on the doctrine of stare decisis. Read literally, it requires application of all of the provisions of the initiative to all "other persons, organizations, local governments, districts," notwithstanding any declaration of unconstitutionality, or other infirmity, with respect to some other person or entity.

The efficacy of such a provision to subvert a basic tenet of established jurisprudence we must leave to another day: It has not been briefed or argued here, although we do commend a close reading of *Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455-457 [20 Cal.Rptr. 321, 369 P.2d 937] to any lower court faced with such a contention. For present purposes, it is enough to say a reasonable voter reading this so-called severability clause could not possibly understand it to mean the proposition would survive a declaration of partial unconstitutionality in a particular case, only that such a declaration would not apply in any *other* case.

■ Finding nothing to assist us in the language of the severability clause, we turn to a consideration of the amicus curiae suggestion that repeal of window period taxes is the gist of the proposition, i.e., the expression of the will of the electorate, and the possibility of local ratification a relatively trivial extra. Again, a plain reading of the proposition provides little to support that claim. And, for whatever it is worth, the idea is strongly belied by the ballot arguments supporting and opposing Proposition 62.

---

supplied by the Secretary of State. It is also obvious that many initiatives are the progeny of special interest groups bent on nothing resembling the public good.

These observations might support an argument against the ever increasing use of direct democracy to resolve the burgeoning list of issues which appear to paralyze our elected representatives, but they are only of marginal application to the present task. We must indulge in the fiction that the electorate as a whole was aware of the text of Proposition 62 for the same reason we must assume criminal offenders are entirely familiar with the Penal Code: There is no reasonable alternative. We are less certain as to whether anything should be presumed with respect to the ballot arguments, but believe they are at least of some marginal utility in attempting to assess the expectation of the electorate.

The "Argument in Favor of Proposition 62" did not even allude to an effect on existing taxes, much less to the notion the proposition would conditionally repeal those passed after July 31, 1985; nor did the "Rebuttal to Argument in Favor of Proposition 62" find the window period taxes worthy of mention. Although the "Analysis by the Legislative Analyst" did neutrally describe the window period taxes in a relatively small portion of its text, the "Rebuttal to Argument Against Proposition 62" revealed the principal concerns of the proponents and quite probably had greater impact on the electorate's understanding of the chief purposes of Proposition 62. It read, "The argument against Proposition 62 says nothing at all about the real objective of Proposition 62. *The real objective is winning back your right to vote.* [¶] Lincoln said it best: 'Government of, by and for the people.' [¶] The opponents' argument makes it clear—[¶] 1. They want to deny the people's right to vote on tax raises the people would have to pay. [¶] 2. They want government to control the people by unlimited taxation rather than people controlling the government. [¶] 3. They say this proposition 'interferes with local control.' Local control by whom? Certainly not the people. [¶] Recently, some 108 local governments have raised taxes more than 300 million dollars with no vote of the people. Unless Proposition 62 passes, you can expect much higher taxes from local government every year and you won't have a say. [¶] It is in your interest to vote YES ON PROPOSITION 62. [¶] It will bring back rights the State Supreme Court took away from us, which we won with Proposition 13." (Italics added.)

Thus, the major thrust of Proposition 62, at least as it was presented to the voters, was the fatally defective attempt to shift control of local taxation to the local electorate, the one portion of this statutory measure which clearly cannot survive constitutional scrutiny. Under these circumstances, especially in view of the odd wording of the severability clause and the total absence of any suggestion in the ballot arguments that existing taxes would be affected, we cannot infer an intent to repeal window period taxes generally on behalf of the voters.

Indeed, it would make little sense for a San Clemente voter to seek repeal of a Santa Clara tax or a Yreka voter to desire repeal of an El Centro tax. On the other hand, it would be entirely plausible for them to agree, along with the sponsors of Proposition 62, that as a matter of general principle, all local taxes should be ratified by the local electorate. In other words, we are disinclined to read an ambiguous and constitutionally defective ballot measure to repeal all local taxes enacted in this state after July 31, 1985, without recourse, where such a possibility would have been less expected than a rattlesnake in a clothes hamper by most voters.

The judgment is reversed with directions to proceed in accordance with the views expressed above. All parties shall bear their own costs.

Scoville, P. J., and Wallin, J., concurred.

The petition of intervener and respondent for review by the Supreme Court was denied December 15, 1988.

APPENDIX

## 62 Taxation. Local Governments and Districts. Initiative Statute

### Official Title and Summary Prepared by the Attorney General

TAXATION. LOCAL GOVERNMENTS AND DISTRICTS. INITIATIVE STATUTE. Enacts statutes regarding new or increased taxation by local governments and districts. Imposition of special taxes, defined as taxes for special purposes, will require approval by two-thirds of voters. Imposition of general taxes, defined as taxes for general governmental purposes, will require approval by two-thirds vote of legislative body; submission of proposed tax to electorate; approval by majority of voters. Contains provisions governing election conduct. Contains restrictions on specified types of taxes. Restricts use of revenues. Requires ratification by majority vote of voters to continue taxes imposed after August 1, 1985. Summary of Legislative Analyst's estimate of net state and local government fiscal impact: The measure prevents imposition of new or higher general taxes by local agencies without voter approval. It also could reduce existing tax revenues to local agencies, if a majority of their voters do not ratify the continuation of new or higher taxes adopted after August 1, 1985. As this is a statutory, not a constitutional, initiative, the provisions of this measure imposing penalties and requiring voter approval cannot be applied to charter cities.

### Analysis by the Legislative Analyst

**Background**

Under the State Constitution, charter cities have broad authority to impose new or higher taxes. General law cities have been granted similar authority by the Legislature. Counties and certain special districts, including transit districts, have limited authority to impose new or higher taxes.

The taxes imposed by these local government agencies are classified as either *general* or *special* taxes. A *general* tax raises money for general governmental purposes. Conversely, the revenue generated by a *special* tax must be used for a specific purpose.

New or higher general taxes must be approved by at least a majority of the local agency's governing body. In some cases, approval also must be given by a majority of the voters. New or higher special taxes must generally be approved by at least two-thirds of the voters.

**Proposal**

This measure establishes new requirements for the adoption of new or higher general and special taxes by local agencies. In particular, this measure:

1. Requires all proposals for a new or higher *general* tax to be approved by two-thirds of the local agency's governing body, and by a majority of the voters.

2. Requires all local ordinances or resolutions proposing a new or higher general or special tax to contain specific information. For example, the ordinance must state the method of collection and the proposed use of the special tax revenues.

3. Penalizes local agencies that fail to comply with the above requirements. The measure requires a reduction in the agency's property tax allocations equal to the revenues derived from the new or higher tax.

4. Requires local agencies to stop collecting any new or higher general tax adopted after July 31, 1985, unless a majority of the voters approve the tax by November 5, 1985.

Because this measure is not a constitutional amendment, the approval requirements for the adoption of new or higher *general* taxes, and the penalty provisions, would not apply to charter cities. Thus, this measure does not change the constitutional authority of charter cities to impose new or higher general taxes by a majority vote of the city council.

**Fiscal Effect**

This measure would prevent the imposition of new or higher general taxes without voter approval by local agencies other than charter cities. The measure also could reduce the amount of tax revenues collected by local agencies in the future, if a majority of their voters do not authorize the continuation of new or higher taxes adopted after August 1, 1985.

Be a ballot boxer. Vote.
David Eaton, Roseville

## Text of Proposed Law

This initiative measure is·submitted to the people in accordance with the provisions of Article II, Section 8 of the Constitution.

This initiative measure adds sections to the Government Code; therefore, the new provisions proposed to be added are printed in *italic type* to indicate that they are new.

### PROPOSED LAW

Article·3.7 is hereby added to Chapter 4 (Financial Affairs) of Part 1 (Powers and Duties Common to Cities, Counties and other agencies) of Div. 2· (Cities, Counties and other Agencies) of Title 5 (Local Agencies) of the Government Code, commencing with Section 53720.

### ARTICLE 3.7
### VOTER APPROVAL OF TAXES

*53720. DEFINITIONS.*
*As used in this Article:*
*(a) "local government" means any county, city, city and county, including a chartered city or county, or any public or municipal corporation; and,*
*(b) ·"district" means an agency of the state, formed pursuant to general law or special act, for the local performance of governmental or proprietary functions within limited boundaries.*
*53721. All taxes are either special taxes or general taxes. General taxes are taxes imposed for general governmental purposes. Special taxes are taxes imposed for specific purposes.*
*53722. No local government or district may impose any special tax unless and until such special tax is submitted to the electorate of the local government, or district and approved by a two-thirds vote of the voters voting in an election on the issue.*
*53723. No local government, or district, whether or not authorized to levy a property tax, may impose any general tax unless and until such general tax is submitted to the electorate of the local government, or district and approved by a majority vote of the voters voting in an election on the issue.*
*53724. (a) A tax subject to the vote requirements prescribed by Section 53722 or Section 53723 shall be proposed by an ordinance or resolution of the legislative body of the local government or district. The ordinance or resolution proposing such tax shall include the type of tax and rate of tax to be levied, the method of collection, the date upon which an election shall be held on the issue, and, if a special tax, the purpose or service for which its imposition is sought.*
*(b) No tax subject to the vote requirement prescribed by Section 53723 shall be presented at an election unless the ordinance or resolution proposing such tax is approved by a two-thirds vote of all members of the legislative body of the local government or district.*
*(c) Except as provided in subdivision (d), the election on any tax proposed pursuant to this Article shall be consolidated with a statewide primary election, a statewide general election, or a regularly scheduled local election at which all of the electors of the local government or district are entitled to vote.*
*(d) Notwithstanding subdivision (c), the legislative body of the local government or district may provide that the election on any tax proposed pursuant to this Article shall be held at any date otherwise permitted by law. The local government or district shall bear the cost of any election held pursuant to this subdivision. An election held pursuant to this subdivision shall be deemed at the request of the local government or district calling such election, and shall not be deemed a state mandate.*
*(e) The revenues from any special tax shall be used only for the purpose or service for which it was imposed, and for no other purpose whatsoever.*
*53725. (a) Except as permitted in Section 1 of Article XIII A of the California Constitution, no local government or district may impose any ad valorem taxes on real property. No local government or district may impose any transaction tax or sales tax on the sale of real property within the city, county or district.*
*(b) Taxes permitted by Subdivision (b) of Section 1 of Article XIII A of the California Constitution shall not be subject to the vote requirements prescribed by this Article.*
*53726. Except as set forth in Section 53727, this Article shall not be construed to repeal or affect any statute enacted prior to August 1, 1985 which authorizes the imposition of a special tax.*
*53727. (a) Neither this Article, nor Article XIII A of the California Constitution, nor Article 3.5 of Division 1 of Title 5 of the Government Code (commencing with Section 50075) shall be construed to authorize any local government or district to impose any general or special tax which it is not otherwise authorized to impose; provided, however, that any special tax imposed pursuant to Article 3.5 of Division 1 of Title 5 of the Government Code prior to August 1, 1985 shall not be affected by this section.*
*(b) Any tax imposed by any local government or district on or after August 1, 1985, and prior to the effective date of this Article, shall continue to be imposed only if approved by a majority vote of the voters voting in an election on the issue of imposition, which election shall be held within two years of the effective date of this Article. Any local government or district which fails to seek or obtain such majority approval shall cease to impose such tax on and after November 15, 1988.*
*53728. If any local government or district imposes any tax without complying with the requirements of this Article, or in excess of its authority as clarified by Section 53727, whether or not any provision of Section 53727 is held not applicable to such jurisdiction, the amount of property tax revenue allocated to the jurisdiction pursuant to Chapter 6 of part 0.5 of Division 1 of the Revenue and Taxation Code (commencing with Section 95) shall be reduced by one dollar ($1.00) for each one dollar ($1.00) of revenue attributable to such tax for each year that the tax is collected. Nothing in this section shall impair the right of any citizen or taxpayer to maintain any action to invalidate any tax imposed in violation of this Article.*
*53729. This Article may only be amended by vote of the electorate of the State of California.*
*53730. If any provision of this Article, or the application thereof to any person, organization, local government, district, or circumstance is held invalid or unconstitutional, the provision to other persons, organizations, local governments, districts, or circumstances shall not be affected thereby but shall remain in full force and effect.*

 **Taxation. Local Governments and Districts. Initiative Statute**

### Argument in Favor of Proposition 62

A YES vote on Proposition 62 gives back your right to vote on any tax increases proposed by your local governments.

Proposition 62 will decide whether government controls the people, or people control the government.

In 1978, Proposition 13 returned the power to control tax increases to the people, where it belongs. However, the State Supreme Court twisted the language of Proposition 13 in a 1982 decision (City and County of San Francisco vs. Farrell) which took away your right to vote on city and county tax increases.

Since the Supreme Court decision, politicians in over 108 cities already have increased taxes over 300 million dollars without a vote of the people. In all, 138 taxes have been increased, and the figures are growing.

When politicians can raise taxes on their own without a vote of the people, you can bet your bottom dollar those taxes are going to go up and up. They have already risen sharply in communities all over California. And that's just the beginning unless we stop them now with Proposition 62.

You can take back your right to vote on your new or increased local taxes by voting "YES" on Proposition 62, the Taxpayers' Voting Rights Act.

Proposition 62 requires new or increased local, general purpose taxes be approved by a majority vote at an election, after a two-thirds vote by a legislative body of the local government or agency puts the tax on the ballot.

Proposition 62 gives you the right to vote on new taxes as well as increases in existing taxes.

Guarantee your right to vote on your taxes. VOTE YES ON PROPOSITION 62.

> **HOWARD JARVIS**
> *Author of Proposition 13*
> *Chairman, California Tax Reduction Movement*
> **PAUL CARPENTER (D)**
> *State Senator, 33rd District*
> **JOHN J. LYNCH**
> *Deputy Assessor, Los Angeles County*

### Rebuttal to Argument in Favor of Proposition 62

Those claims for Proposition 62 are misleading.

Proponents say taxes have risen "sharply" since 1982. With 20,900,000 people in California cities, their estimate averages $14.35 each—not enough to take a family of four to the movies. It's hardly evidence that city councils are running wild raising taxes.

This proposition is so poorly written that it wouldn't do what proponents claim.

It probably wouldn't require a vote on tax increases. It would require a complex process to impose *new* taxes, but says nothing about a vote to *increase* existing taxes. Nor does it apply to fees or assessments. Like others before it, Proposition 62 would lead to years of costly lawsuits.

The authors even neglected to make this a constitutional amendment. That means they've left out charter cities, which have constitutional authority to govern themselves. They've left out 82 cities, including:

Anaheim
Bakersfield
Downey
Fresno
Glendale
Huntington Beach
Irvine
Long Beach
Los Angeles
Marysville
Oakland
Pasadena
Riverside
Sacramento
San Bernardino
San Diego
San Francisco
San Jose
Santa Ana
Santa Barbara
Stockton
Sunnyvale
Torrance
Ventura

That leaves mostly small- and medium-sized cities, which already generally have lower taxes than charter cities.

On the other hand, Proposition 62 will cost California cities millions in extra interest costs. Investors will be reluctant to buy California municipal bonds because Proposition 62 will make it difficult for noncharter cities to resolve any future fiscal crisis.

Proposition 62 is unnecessary.

It wouldn't do what proponents claim.

It would increase interest costs.

And it would keep lawyers busy for years to come. VOTE "NO" ON PROPOSITION 62.

> **TED COOKE**
> *President, California Police Chiefs Association*
> **BILL TEIE**
> *President, California Fire Chiefs Association*
> **ROY ULRICH**
> *California Common Cause*

## Taxation. Local Governments and Districts. Initiative Statute

### Argument Against Proposition 62

*WE URGE YOU TO VOTE "NO" ON PROPOSITION 62,*

- because it unnecessarily interferes with local control,
- because it would prevent local government from meeting critical local needs, and
- because it-imposes a cumbersome and unworkable process on our system of representative government.

There's·no indication a need exists for a *statewide* law to further limit your city's ability to provide the level of police and fire protection and the quality of parks, street maintenance and other services you want.

If taxes are too high in any one community, voters can use the initiative process at the local level to reduce their own taxes—or turn their elected officials out of office.

*Why restrict all California cities, when local voters already have the authority to control the amount of local taxes they pay?*

*Why impose a statewide law when a local initiative will do?*

The fact is Proposition 62 goes far beyond the taxpayer protections of current law. It requires an overly restrictive and cumbersome two-step process. In practice, it would prevent local government from raising necessary revenues—*no matter how great the need.*

Your city council members *already* are prohibited by law from raising the property tax or sales tax. They can't impose an income tax. They may charge fees for some services, but only enough to cover the cost of providing those services. State law also limits how much your city can spend.

And your city council members know they will face your wrath at the next election if they've misjudged your wishes.

Current law provides little flexibility in financing local needs when existing revenue sources fall short, some exceptional need arises, or the people demand more or better services.

During the recent recession, cities throughout California worked hard to maintain adequate levels of police, fire and paramedic protection and other basic services. They economized, dropped programs, laid off workers, and delayed repairs of streets and other public structures. When no other means could be found, some cities had to raise revenues to keep police officers and firefighters on the job.

Take away that flexibility and you leave your city council with all the responsibility for meeting your needs, but none of the authority they *must* have to get the job done.

Not all Californians are alike, nor are all California cities. Why treat them as if they come from the same mold?

DON'T put statewide restrictions on all California cities when local problems should be solved by local laws.

DON'T tie the hands of the people you elect to represent you.

DON'T make it harder to get what you need from City Hall.

DO make sure your city council has the tools it needs to meet your needs.

*VOTE "NO" ON PROPOSITION 62.*

**LINDA BRODER**
*President, League of Women Voters of California*

**LENNY GOLDBERG**
*Executive Director, California Tax Reform Association*

**DANIEL A. TERRY**
*President, Federated Firefighters of California*

### Rebuttal to Argument Against Proposition 62

The argument against Proposition 62 says nothing at all about the real objective of Proposition 62. The real objective is winning back your right to vote.

Lincoln said it best: "Government of, by and for the people."

The opponents' argument makes it clear—

1. They want to deny the people's right to vote on tax raises the people would have to pay.

2. They want government to control the people by unlimited taxation rather than people controlling the government.

3. They say this proposition "interferes with local control." Local control by whom? Certainly, not the people.

Recently, some 108 local governments have raised taxes more than 300 million dollars with no vote of the people. Unless Proposition 62 passes, you can expect much higher taxes from local government every year and you won't have a say.

It is in your interest to vote YES ON PROPOSITION 62.

It will bring back rights the State Supreme Court took away from us, which we won with Proposition 13.

**HOWARD JARVIS**
*Author of Proposition 13*
*Chairman, California Tax Reduction Movement*

**PAUL CARPENTER (D)**
*State Senator, 33rd District*

**JOHN J. LYNCH**
*Deputy Assessor, Los Angeles County*